RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0005p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee*,

                                                    Nos. 12-6522/13-5535
            *v.*

CORTEZ DEWAYNE COOPER (12-6522) and
TERRY LEE ADAMS (13-5535),
            *Defendants-Appellants.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:10-cr-20366—John Thomas Fowlkes, Jr., District Judge.

Decided and Filed:  January 7, 2014

Before:  MOORE and COOK, Circuit Judges; GWIN, District Judge.[*]

_____

**COUNSEL**

**ON BRIEF:** Kenneth P. Tableman, KENNETH P. TABLEMAN, P.C., Grand Rapids, Michigan, for Appellant in 12-6522.  Jeff Woods, Memphis, Tennessee, for Appellant in 13-5535.  Kevin G. Ritz, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.

_____

**OPINION**

_____

KAREN NELSON MOORE, Circuit Judge.  On October 27, 2010, a grand jury returned a thirty-nine-count indictment against fourteen individuals, including Defendants-Appellants Terry Lee Adams and Cortez Dewayne Cooper.  Among other crimes, the grand jury charged Adams and Cooper with conspiring to distribute cocaine and cocaine base (crack cocaine) in violation of 21 U.S.C. § 846.  Both pleaded guilty.

_____
[*]The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

1

Given the defendants' prior offenses, the district court found Adams and Cooper to be career offenders, applied the U.S.S.G. § 4B1.1 sentencing enhancement, and sentenced them to 165 months and 120 months of imprisonment, respectively. On appeal, the co-conspirators challenge their sentences, objecting to the application and constitutionality of the career-offender guidelines. We **AFFIRM**.

## I.  BACKGROUND

The Federal Bureau of Investigation started tapping Pierre Isom's telephone in April 2010, suspecting that Isom was distributing powder cocaine and crack cocaine in and around Dyersburg, Tennesseee. While monitoring the wiretap, the FBI learned that Adams and Cooper were involved in Isom's distribution operation. The intercepted conversations led to Adams and Cooper being charged in the thirty-nine-count indictment.

## A.  Adams

Between April 3 and April 18, 2010, the FBI heard Adams ask—in code—for a total of ninety-one grams of powder cocaine. Based on this information, the grand jury indicted Adams on one count of conspiring to distribute powder cocaine and crack cocaine, in violation of 21 U.S.C. § 846, and two counts of using a telecommunications device to facilitate the distribution of powder cocaine and crack cocaine, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 843. R. 4-1 (Indictment at 1–2, 14) (Page ID #126–27, 139). On November 18, 2010, officers arrested Adams, and a magistrate judge released Adams on bond pending trial. While on pretrial release, however, Adams sold 3.37 grams of crack cocaine—$90 worth—to a confidential informant used by the Dyersburg Police Department. These undercover buys led to a grand jury indicting Adams in another federal case.

On October 5, 2012, Adams entered into a Rule 11(c)(1)(C) plea agreement with the government. In exchange for the government dropping the remaining counts and cases against him, Adams pleaded guilty to one count of conspiracy to possess with intent to distribute and to distribute controlled substances in violation of 21 U.S.C.

§ 846.  R. 540 (Adams Plea Agreement at 1–4) (Page ID #942–45).  For purposes of the guilty plea, the parties agreed that Adams was responsible for possessing ninety-one grams of powder cocaine.  *Id.* at 1–2 (Page ID #942–43).

Under the Sentencing Guidelines, ninety-one grams of powder cocaine equals 18.2 kilograms of marijuana and corresponds with a base offense level of 16.  U.S.S.G. § 2D1.1(c)(12), cmt. n.8(D); *see also* Adams Presentence Investigation Report ("Adams PSR") at 8 ¶ 19.  However, the probation office recommended the application of the career-offender enhancement due to Adams's prior state convictions for the sale of cocaine in 1996 and for aggravated assault in 1999.  Adams PSR at 9 ¶ 27, 13 ¶ 41, 15 ¶ 44; *see also* U.S.S.G. § 4B1.1(a).  With the enhancement, which is based on the statutory maximum, Adams's total offense level rose to 32.  Adams PSR at 9 ¶ 27.

Adams objected to the classification of his aggravated-assault conviction as a crime of violence under U.S.S.G. § 4B1.1(a).  *See* R. 652 (Adams Am. Sent. Mem. at 1) (Page ID #1309).  At the sentencing hearing, Adams restated and elaborated upon his objection to no avail.  The district court recognized that Tennessee Code Annotated § 39-13-102 (1998), the applicable statute, punished intentional and knowing conduct as a Class C felony, but it also criminalized reckless assault as a Class D felony.  R. 672 (Adams Sent. Hr'g Tr. at 15:18–23) (Page ID #1362).  The former would be a crime of violence, but the latter might not qualify.  Relying on the state-court indictment and judgment, however, the district court found that Adams was convicted of the Class C felony, meaning that his aggravated-assault conviction qualified as a crime of violence. *Id.* at 22:5–14 (Page ID #1369).  Thus, after granting Adams a three-level adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1, the district court fixed Adams's final offense level at 29, which corresponded to a guidelines range of 151 to 188 months. R. 672 (Adams Sent. Hr'g Tr. at 23:12–16) (Page ID #1370).  The district court imposed a sentence of 165 months of incarceration.  *Id.* at 39:10–11 (Page ID #1386).  Adams appeals, arguing (1) that the district court erred by designating him a career offender; and (2) that his Sixth Amendment rights were violated when the court, as opposed to a jury, found as a matter of fact that Adams had been convicted of two qualifying felonies.

**B. Cooper**

The FBI also caught Cooper conversing with Isom regarding the distribution of crack cocaine, which led to his indictment on one count of conspiracy to distribute a controlled substance, in violation of 21 U.S.C. § 846, and four counts of using a telecommunications device to facilitate the distribution of a controlled substance, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 843. *See* R.4-1 (Indictment at 1–2, 17) (126–27, 142). On June 8, 2012, Cooper entered into a Rule 11(c)(1)(C) agreement with the government in which he pleaded guilty to one count of conspiring to possess with intent to distribute and to distribute crack cocaine. R. 422 (Cooper Plea Agt. at 1–3) (Page ID #752–54). The parties agreed that Cooper was responsible for seventy-five grams of crack cocaine, which gave Cooper a base offense level of 26. *Id.* at 2 (Page ID #753); *see also* U.S.S.G. § 2D1.1(c)(7). During the compilation of Cooper's PSR, however, the probation office discovered that Cooper had two prior convictions for controlled-substance offenses. Cooper PSR at 12 ¶ 39, 13 ¶ 40. These convictions triggered the application of the career-offender enhancement, causing his total offense level to rise to 31, even after a three-level adjustment for acceptance of responsibility. *Id.* at 7 ¶ 30. An offense level of 31 corresponded to a guidelines-recommended sentence of 188 to 235 months of imprisonment. *Id.* at 21 ¶ 77.

Cooper did not dispute that he qualified as a career offender under U.S.S.G. § 4B1.1(a), but he objected to the guideline enhancement itself, arguing that it was "much more than is necessary to satisfy the sentencing factors set forth in 18 U.S.C. § 3553(a)." R. 529 (Cooper Sent. Mem. at 2) (Page ID #878). The district court rejected Cooper's policy objection and sentenced him to 188 months in prison. R. 618 (Cooper Sept. 25, 2012 Sent. Hr'g Tr. at 22:7–17) (Page ID #1158). A week later, however, the district court adjusted Cooper's sentence down to 120 months because it considered the 188-month sentence "more time than is sufficient to accomplish the goals of the sentencing factors." R. 619 (Cooper Oct. 1, 2012 Sent. Hr'g Tr. at 7:14–16) (Page ID #1168). The government made no objection, and Cooper's attorney had "no objection to the court's determination that a hundred and [twenty] months is an adequate sentence

in this matter." *Id.* at 8:16–18 (Page ID #1169). Now on appeal, Cooper attacks his sentence; he claims (1) that the application of the career-offender guideline makes his sentence substantively unreasonable; and (2) that his constitutional rights were violated because his prior convictions were not proven to a jury beyond a reasonable doubt.

## II. ANALYSIS

### A. Crime of Violence

Adams first challenges the district court's application of the career-offender enhancement, particularly the court's determination that Adams's 1999 state-court conviction for aggravated assault qualifies as a crime of violence under U.S.S.G. § 4B1.2(a). Whether a defendant is a career offender and whether a crime is a crime of violence under the guidelines are legal questions that we review de novo. *See United States v. Rede-Mendez*, 680 F.3d 552, 555 (6th Cir. 2012).

The guidelines classify a defendant as a career offender if he (1) was at least eighteen years old at the time of the instant offense; (2) was convicted of "a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant ha[d] at least two prior felony convictions of either a *crime of violence* or a controlled substance offense." § 4B1.1(a) (emphasis added). In turn, the guidelines define a "crime of violence" as

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

§ 4B1.2(a). Complicating matters slightly, the commentary to the guidelines expands on this definition and lists "aggravated assault" as an example of a crime of violence. § 4B1.2 cmt. n.1. As a result, we have previously said that

> a prior felony conviction can qualify as a 'crime of violence' in one of three ways: (1) the conviction is one of the crimes specifically enumerated in Application Note 1 to the career offender guideline; (2) if not specifically enumerated, the crime has as an element the use, attempted use, or threatened use of physical force; or (3) if the offense is not specifically enumerated or does not include physical force as an element, the crime involved conduct posing a serious potential risk of physical injury to another person.

*United States v. Rodriguez*, 664 F.3d 1032, 1036 (6th Cir. 2012) (citing *United States v. Ruvalcaba*, 627 F.3d 218, 221 (6th Cir. 2010)).  For the sake of clarity, we will refer to these three approaches as, respectively, the "enumerated-offense prong," the "elements prong," and the "residual prong."

In determining whether a prior conviction qualifies as a crime of violence, we conduct a well-established two-step analysis.  First, we apply the categorical approach outlined in *Taylor v. United States*, 495 U.S. 575 (1990), "look[ing] only to the fact of conviction and the statutory definition—not the facts underlying the offense—to determine whether that definition supports a conclusion that the conviction was for a crime of violence."  *United States v. Bartee*, 529 F.3d 357, 359 (6th Cir. 2008) (citing *United States v. Armstead*, 467 F.3d 943, 947 (6th Cir. 2006)).  Second, "[i]f it is possible to violate the statute in a way that would constitute a crime of violence and in a way that would not, [we] may consider the indictment, guilty plea, or similar documents to determine whether they necessarily establish the nature of the prior conviction."  *United States v. Gibbs*, 626 F.3d 344, 352 (6th Cir. 2010) (citing *Shepard v. United States*, 544 U.S. 13, 26 (2005)).

**1.  Categorical Approach**

We first consider whether a prior conviction under Tennessee Code Annotated § 39-13-102 categorically qualifies as a crime of violence.  At the time of Adams's conviction, § 39-13-102 read:

> (a) A person commits aggravated assault who:
>     (1) Intentionally or knowingly commits an assault as
>     defined in § 39-13-101 and:

> > (A) Causes serious bodily injury to another; or
> > (B) Uses or displays a deadly weapon; or
> (2) Recklessly commits an assault as defined in § 39-13-101(a)(1), and:
> > (A) Causes serious bodily injury to another; or
> > (B) Uses or displays a deadly weapon.
> (b) A person commits aggravated assault who, being the parent or custodian of a child or the custodian of an adult, intentionally or knowingly fails or refuses to protect such child or adult from an aggravated assault as defined in subdivision (a)(1) or aggravated child abuse as defined in § 39-15-402.
> (c) A person commits aggravated assault who, after having been enjoined or restrained by an order, diversion or probation agreement of a court of competent jurisdiction from in any way causing or attempting to cause bodily injury or in any way committing or attempting to commit an assault against an individual or individuals, intentionally or knowingly attempts to cause or causes bodily injury or commits or attempts to commit an assault against such individual or individuals.
> (d) Aggravated assault under subdivision (a)(1) or subsection (b) or (c) is a Class C felony. Aggravated assault under subdivision (a)(2) is a Class D felony. . . .

Furthermore, in Tennessee at that time:

> (a) A person commits assault who:
> > (1) Intentionally, knowingly or recklessly causes bodily injury to another;
> > (2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or
> > (3) Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative. . . .

Tenn. Code Ann. § 39-13-101 (1998).

As the parties recognize, § 39-13-102 can be offended in a number of ways. For instance, a person could intentionally or knowingly commit an assault using a deadly weapon, violating § 39-13-102(a)(1)(B); a person could recklessly commit an assault causing serious bodily injury, violating § 39-13-102(a)(2)(A); or a person could knowingly fail to protect a child from an aggravated assault as defined in § 39-13-

102(a)(1), violating § 39-13-102(b).  If the statute is to satisfy the categorical approach, each avenue for violating § 39-13-102 must constitute a crime of violence.  *See Gibbs*, 626 F.3d at 352.  To its credit, the government concedes that Adams's prior conviction under § 39-13-102 "does not categorically qualify as a crime of violence under either the [elements prong] or the residual [prong]," according to our past decisions, because the statute criminalizes reckless conduct.  Appellee Br. at 19 (citing *United States v. McMurray*, 653 F.3d 367 (6th Cir. 2011)); *see also United States v. Portela*, 469 F.3d 496, 499 (6th Cir. 2006) ("[A] crime requiring only recklessness does not qualify as a 'crime of violence' . . . .").

The government's arguments are less clear with regard to the enumerated-offense prong.  We recognize that our holdings regarding § 39-13-102 and the enumerated-offense prong have been less than clear, *see McMurray*, 653 F.3d at 373 n.4 (collecting cases), but we now hold that a violation of § 39-13-102 is not categorically a crime of violence for sentencing-enhancement purposes purely by virtue of its inclusion as an enumerated offense in U.S.S.G. § 4B1.2 cmt. n.1.

On prior occasions, we have recognized that "a specific offense [does not] automatically qualify as a crime of violence just because it has the same name as one of the enumerated offenses."  *Rede-Mendez*, 680 F.3d at 556 (citing *Taylor*, 495 U.S. at 588–89).  Instead, we must look to the generic definition of aggravated assault, "which is found by surveying how the crime is described across jurisdictions, as well as consulting sources such as the Model Penal Code," and then compare the scope of § 39-13-102 to that definition.  *Id.* (citing *Taylor*, 495 U.S. at 598 & n.8; *United States v. McFalls*, 592 F.3d 707, 716–17 (6th Cir. 2010)).  Only if § 39-13-102 criminalizes the same or a narrower set of conduct as generic aggravated assault will the statute categorically qualify as a crime of violence under the enumerated-offense prong.

In *McFalls*, we examined the South Carolina common-law crime of aggravated assault and observed:

> Defining aggravated assault generically is particularly difficult because
> many states define assault in terms of degrees rather than with the terms

> simple or aggravated, *see, e.g.*, Ala. Code § 13A-6-20(a), and because some states still retain the common law distinction between assault and battery. *See, e.g.*, W. Va. Code § 61-2-9. After surveying these laws, the Model Penal Code concluded that a person should be guilty of aggravated assault if he "(a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon." Model Penal Code § 211.1(2).

592 F.3d at 716–17. The South Carolina crime failed to qualify under the enumerated-offense prong because it criminalized conduct requiring a mens rea of simple recklessness, which was outside the generic definition. *Id.* at 717. In contrast, we held that Ohio's fourth-degree aggravated assault statute fit within the enumerated-offense prong because it required the state to prove that a person acted at least knowingly, a mens rea covered by generic aggravated assault. *See Rodriguez*, 664 F.3d at 1037–39. Here, like the South Carolina crime, § 39-13-102 is broader than the generic definition and thus fails to satisfy the enumerated-offense prong. Specifically, § 39-13-102 reaches conduct outside the scope of that covered by the generic definition in at least two ways. One, it criminalizes reckless conduct without requiring the state to prove "extreme indifference to the value of human life." *See* § 39-13-102(a)(2). Two, it punishes a parent's failure to prevent an aggravated assault against his or her child. § 39-13-102(b). In doing so, § 39-13-102 encompasses more conduct than generic aggravated assault, and therefore it does not categorically qualify as a crime of violence under the enumerated-offense prong.[1]

---

[1] The government cites our unpublished decision in *United States v. Mendoza-Mendoza*, 239 F. App'x 216, 222 (6th Cir. 2007), which held that the reckless version of § 39-13-102 qualified as a crime of violence under the analogous U.S.S.G. § 2L1.2(b)(1) cmt. n.1(B)(iii). Appellee Br. at 20. *Mendoza-Mendoza* is arguably in conflict with our decision today, but that panel and the Fifth Circuit in *United States v. Mungia-Portillo*, 484 F.3d 813, 816–17 (5th Cir. 2007), upon which the opinion in *Mendoza-Mendoza* heavily relies, failed to consider subsections (b) and (c) of § 39-13-102. Moreover, those prior cases tolerated a greater degree of variance between the generic offense and § 39-13-102 than we believe our previous published decisions in *McFalls* and *McMurray* allow. In any event, this panel is bound only by holdings of the Supreme Court and published decisions of prior panels. *See Darrah v. City of Oak Park*, 255 F.3d 301, 310 (6th Cir. 2001). No such precedent exists to bind or guide us today.

## 2. Modified-Categorical Approach

Under the categorical approach, it is unclear whether Adams's aggravated-assault conviction constitutes a crime of violence, so we turn to the *Shepard* documents to determine, if we can, which subsection of § 39-13-102 Adams was convicted of violating.**2** We may look "to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard*, 544 U.S. at 26. Furthermore, "our inquiry is limited to facts [the] defendant necessarily admitted in entering a guilty plea." *McMurray*, 653 F.3d at 377 (quoting *United States v. Medina-Almaguer*, 559 F.3d 420, 424 (6th Cir. 2009)) (alteration in original; internal quotation marks omitted). We may not consider the factual recitations in the PSR. *United States v. Hockenberry*, 730 F.3d 645, 666–67 (6th Cir. 2013); *United States v. Wynn*, 579 F.3d 567, 576 (6th Cir. 2009) (citing *Bartee*, 529 F.3d at 361).

In this case, the indictment, plea agreement, and state-court judgment demonstrate that Adams necessarily pleaded guilty to a violation of Tennessee Code Annotated § 39-13-102(a)(1).**3** In the indictment, the grand jury charged Adams with "unlawfully and intentionally, knowingly[,] or recklessly [causing] ERIC THORNTON to reasonably fear imminent bodily injury, by use or display of a deadly weapon, namely,

---

**2**Adams contends that it is inappropriate to resort to the modified-categorical approach. *See* Adams Br. at 10 (citing *Descamps v. United States*, 133 S. Ct. 2276 (2013)). He is in error. *Descamps* reaffirmed that the modified-categorical approach is a tool that "merely helps implement [*Taylor*'s] categorical approach," and the Court held that using *Shepard* documents was inappropriate when the statute was indivisible. 133 S. Ct. at 2285. As explained above, however, § 39-13-102 is divisible, and therefore it is necessary to use the modified-categorical approach to determine whether Adams's conviction qualifies as a crime of violence.

**3**In the district court, Adams claimed that "[t]he burden is on the United States Government to produce . . . certified copies of the indictment or the—the judgment of conviction or any other [*Shepard*] documents." R. 672 (Adams Sent. Hr'g Tr. at 17:8–12) (Page ID #1364). On appeal, he arguably renews this challenge. *See* Adams Br. at 10 ("Moreover, Mr. Adams would argue that the documents relied upon were not certified copies." (citation omitted)). We need not decide whether the government has a duty to produce (or did produce) "certified copies" of *Shepard* documents because Adams has waived this argument by quoting the indictment in papers filed before the district court. *See* R. 652 (Adams Am. Sent. Mem. at 2–3) (Page ID #1310–11); *see also Hockenberry*, 730 F.3d at 667 ("[W]ithin his sentencing memorandum, [the defendant] conceded—at least implicitly—that he had been convicted of the prior offenses.").

a handgun, . . . in violation of [Tenn. Code Ann.] § 39-13-102, a Class C Felony . . . ." R. 654 at Ex. 2 (Indictment); *see also* R. 652 (Adams Am. Sent. Mem. at 2–3) (Page ID #1310–11) (quoting indictment). Because the only aggravating factor that the grand jury listed was the use or display of a deadly weapon, Adams must have been charged with and pleaded guilty to violating either § 39-13-102(a)(1)(B), which requires a mens rea of intent or knowledge, or § 39-13-102(a)(2)(B), which requires only recklessness. While the indictment references both mental states, the grand jury explicitly alleged that Adams committed a Class C felony. *See* R. 654 at Ex. 2 (State-court Indictment). The plea agreement and state-court judgment confirm that Adams pleaded guilty to a Class C felony. *See* R. 654 at Ex. 2 (State-court Plea Agreement at 2); *Id.* at Ex. 2 (State-court Judgment). Of the two possible versions of the crime, only § 39-13-102(a)(1)(B) is a Class C felony[4]; the provision criminalizing reckless aggravated assault, on the other hand, is a Class D felony. *See* § 39-13-102(d). As a result, the *Shepard* documents show that Adams necessarily pleaded guilty to a violation of § 39-13-102(a)(1)(B): intentionally or knowingly assaulting someone using or displaying a deadly weapon.

Concluding that Adams necessarily pleaded guilty to violating § 39-13-102(a)(1)(B), we look again to see if Adams's conviction qualifies as a crime of violence under U.S.S.G. §§ 4B1.1 and 4B1.2. We hold that it does qualify under the enumerated-offense prong. As noted above, Application Note 1 classifies "generic aggravated assault" as a crime of violence. *McFalls*, 592 F.3d at 716–17. Specifically, this crime includes "'knowingly caus[ing] [or attempting to cause] bodily injury to another with a deadly weapon.'" *Id.* at 717 (quoting Model Penal Code § 211.1(2)). Tennessee Code Annotated § 39-13-102(a)(1)(B) mirrors this language almost exactly, and most importantly, § 39-13-102(a)(1)(B) does not criminalize conduct left untouched by the

---

[4]In *McMurray*, we addressed whether the *Shepard* documents demonstrated that a prior version of § 39-13-102 qualified as a crime of violence. *See* 653 F. 3d at 377–78. As in this case, the *Shepard* documents showed that the defendant pleaded guilty to a Class C felony-version of aggravated assault. *Id.* at 378. Importantly, though, the statute at that time lumped together all aggravated assaults with a deadly weapon as Class C felonies, regardless of the mens rea required. *Id.* (citing Tenn. Code Ann. § 39-13-102(b) (1991)). "Therefore, the fact that McMurray pleaded guilty to a Class C felony d[id] not establish whether he pleaded guilty to intentional, knowing, or reckless aggravated assault." *Id.* Here, however, the facts and applicable statute are different, which allows us to determine that Adams must have pleaded guilty to a violation of § 39-13-102(a)(1)(B).

Model Penal Code, which § 39-13-102(a)(2)(B) does. Accordingly, we conclude that the offense to which Adams pleaded guilty is a crime of violence based on the text of the statute and the guidelines.

Our decisions in *Rodriguez* and *McFalls* add strength to and confirm this decision. In *Rodriguez*, we held that Ohio's fourth-degree aggravated-assault statute fit within the enumerated-offense prong. 664 F.3d at 1036–37. That statute stated that "'[n]o person, while under the influence of sudden passion . . . , shall knowingly: . . . [c]ause or attempt to cause physical harm to another . . . by means of a deadly weapon . . . .'" *Id.* at 1037 (quoting Ohio Rev. Code § 2903.12(A)(2)). We held that "[b]ecause Ohio's fourth-degree aggravated assault statute . . . requires knowing and intentional conduct, a felony conviction under § 2903.12 qualifies as an enumerated 'crime of violence' under Application Note 1 to [U.S.S.G.] § 4B1.2 for purposes of applying the career offender guideline." *Rodriguez*, 664 F.3d at 1037. The only difference between Ohio's statute and § 39-13-102(a)(1)(B) is the sudden-passion language. However, that means little, because the generic definition of aggravated assault does not touch on whether the assault must be a crime of passion. More importantly, the mens rea required by § 39-13-102(a)(1)(B) and the Ohio statute—knowledge—is covered by the generic statute, unlike the statute at issue in *McFalls*, which criminalized reckless aggravated assault. *See* 592 F.3d at 717 (finding that a felony conviction under South Carolina's common-law aggravated assault crime was not categorically a crime of violence because it covered reckless conduct, which was outside the generic definition). Section 39-13-102(a)(1)(B) criminalizes acts covered by the generic definition, as recognized by our prior cases, and it requires the prosecutor to prove a knowing state of mind. Therefore, we hold that the enumerated-offense prong covers Adams's conviction under § 39-13-102(a)(1)(B) and, thus, his conviction qualifies as a crime of violence.[5]

---

[5]Because a defendant's conviction need only qualify as a crime of violence under one prong and the enumerated-offense prong answers the question before us, we have no need to analyze Adams's conviction under the elements prong or the residual prong.

***

In summary, as the government concedes, a felony conviction under § 39-13-102 does not categorically qualify as a crime of violence under U.S.S.G. §§ 4B1.1 and 4B1.2. However, the *Shepard* documents demonstrate that Adams necessarily pleaded guilty to violating Tennessee Code Annotated § 39-13-102(a)(1)(B), a Class C felony. This section of the statute criminalizes conduct within the generic definition of aggravated assault and does not cover a wider range of behavior. Thus, Adams's conviction qualifies as a crime of violence under Application Note 1 of U.S.S.G. § 4B1.2, and the district court correctly applied the career-offender enhancement to Adams.

## B.  Reasonableness of Cooper's Sentence

We next turn to Cooper's challenge regarding his 120-month sentence. Since the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), we review sentences for procedural and substantive reasonableness under an abuse-of-discretion standard. *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007). A sentence is not procedurally reasonable if the district court "fail[s] to calculate (or improperly calculat[es]) the Guidelines range, treat[s] the Guidelines as mandatory, fail[s] to consider the [18 U.S.C.] § 3553(a) factors, [or] select[s] a sentence based on clearly erroneous facts . . . ." *Gall v. United States*, 552 U.S. 38, 51 (2007). "Substantive unreasonableness focuses on the length and type of the sentence and will be found when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Camacho-Arellano*, 614 F.3d 244, 247 (6th Cir. 2010) (internal citations and quotation marks omitted).

Cooper admits that the district court correctly applied the career-offender guidelines, *see* Cooper Br. at 12, but he argues that we "should hold that application of the Career Offender guideline, at all, produces an unreasonable sentence," *id.* at 15 (citing *United States v. Newhouse*, 919 F. Supp. 2d 955 (N.D. Iowa 2013)). District courts *may* depart downward from a guidelines-recommended sentence, in certain cases, based on a policy disagreement with the Sentencing Commission. *See, e.g.*, *Spears v.*

*United States*, 555 U.S. 261, 263–64 (2009); *Kimbrough v. United States*, 552 U.S. 85, 91 (2007); *United States v. Johnson*, 553 F.3d 990, 995–96 (6th Cir. 2009). We have never held, as Cooper acknowledges, that a district court *must* depart downward from a guidelines-recommended sentence. *See, e.g.*, *United States v. Brooks*, 628 F.3d 791, 800 (6th Cir. 2011). We refuse to do so now. The career-offender guidelines may be less than perfect, but district courts are best positioned—at least in the first instance—to sift through the facts of an individual case and determine an appropriate sentence for each defendant.

In Cooper's case, the district court met its responsibility. At the sentencing hearing, the district court took considerable time to determine "the sentence that best fits [Cooper's particular] circumstances." R. 618 (Cooper Sept. 25, 2012 Sent. Hr'g Tr. at 20:10) (Page ID #1156). Specifically, the district court addressed Cooper's extensive role in the conspiracy, his long criminal history, his drug use, and his lack of work history. *See, e.g.*, *id.* at 21:20–22:6 (Page ID #1157–58). The district court initially imposed a sentence of 188 months of imprisonment but then resumed the hearing a week later and sentenced Cooper to 120 months of imprisonment because the court determined upon reflection that the 188-month sentence was "more time than is sufficient to accomplish the goals of the sentencing factors." R. 619 (Cooper Oct. 1, 2012 Sent. Hr'g Tr. at 7:14–16) (Page ID #1168). Cooper does not claim that the district court ignored certain mitigating factors, or relied upon impermissible considerations, or imposed his sentence arbitrarily. Thus, on this record, we cannot say that the district court abused its discretion by imposing a 120-month sentence.

## C.  **Applicability of** *Alleyne*

Finally, we take up Adams's and Cooper's allegations that the district court violated the defendants' Sixth Amendment rights by failing to require the government to prove the fact of the defendants' prior convictions to a jury. "The Sixth Amendment provides that those 'accused' of a 'crime' have the right to a trial 'by an impartial jury.' This right, in conjunction with the Due Process Clause, requires that each element of a crime be proved to the jury beyond a reasonable doubt." *Alleyne v. United States*, 133

S. Ct. 2151, 2156 (2013) (quoting U.S. Const. amend. VI).  In *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the Supreme Court held that facts that lead to an increased statutory maximum count as elements and that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Recently, the Court decided that the same is true for facts that trigger an increase in the statutory minimum sentence.  *Alleyne*, 133 S. Ct. at 2163.  This new constitutional ruling, however, means little for the defendants here.

First, *Alleyne* dealt with judge-found facts that raised the mandatory minimum sentence under a statute, not judge-found facts that trigger an increased guidelines range, such as happened to the defendants.  This distinction has been acknowledged by the Supreme Court.  In *Alleyne*, the Court stated that it has "long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment." *Id.* at 2163 (citing *Dillon v. United States*, 130 S. Ct. 2683, 2692 (2010); *Apprendi*, 530 U.S. at 481).  Unlike the statutes at issue in *Alleyne* and *Apprendi*, the career-offender guidelines, which are triggered by judicial factfinding, do not require a district court to give a defendant a higher sentence, nor do they allow a judge to impose a harsher sentence that was necessarily unavailable before.  The career-offender guidelines merely advise a district court how to wield its discretion, and therefore the commands of *Alleyne* do not apply here.

Second, even if *Alleyne* extended to cover increases in the guidelines-recommended sentences, the opinion itself recognizes that federal courts treat the fact of prior convictions differently than other facts that might trigger a change in a defendant's minimum or maximum sentence. *Alleyne*, 133 S. Ct. at 2160 n.1 (discussing *Almendarez-Torres v. United States*, 523 U.S. 224 (1998)).  In *Almendarez-Torres*, the Supreme Court rejected a constitutional challenge to judges finding the facts of prior convictions, which then triggered increased statutory penalties. 523 U.S. at 247. While we have recognized that "*Almendarez-Torres* may stand on shifting sands, the case presently remains good law and we must follow it until the Supreme Court expressly

overrules it." *United States v. Mack*, 729 F.3d 594, 609 (6th Cir. 2013) (citing, *inter alia*, *Alleyne*, 133 S. Ct. at 2160 n.1).  As a result, we must hold that defendants' Sixth Amendment challenges lack merit.

### III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the sentences imposed by the district court.