**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 15a0565n.06

No. 14-4210

FILED
Aug 12, 2015
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| JAYSON MITCHELL, | ) | |
| | ) | **OPINION** |
| **Defendant-Appellant.** | ) | |
| | ) | |

Before: SUHRHEINRICH and MOORE, Circuit Judges; VAN TATENHOVE, District Judge.[*]

KAREN NELSON MOORE, Circuit Judge. Defendant Jayson Mitchell pleaded guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). At sentencing, Mitchell did not contest the facts in the Presentence Investigation Report or challenge the Sentencing Guidelines range as calculated by the district court. Instead, Mitchell argued that he should receive a downward variance from the guidelines range because he has low intellectual functioning. The district court denied Mitchell's request for a downward variance and sentenced Mitchell to 100 months of imprisonment, which was within the guidelines range. On appeal, Mitchell argues this sentence is substantively unreasonable given his low intellectual functioning. For the following reasons, we **AFFIRM** the district court's sentence.

---

[*]The Honorable Gregory F. Van Tatenhove, United States District Judge for the Eastern District of Kentucky, sitting by designation.

**BACKGROUND**

On April 17, 2014, officers from the Cleveland Police Department received a report that a male was observed with a gun in his waistband on W. 48th Street in Cleveland, Ohio. R. 19 (PSR ¶ 5) (Page ID #76).[1] Responding to the report, officers approached Mitchell who was walking on the sidewalk. *Id*. When Mitchell saw the officers approach, he ran down the street and tossed a firearm on the roof of a nearby building. *Id*. The officers eventually caught Mitchell and recovered the firearm from the roof. *Id*. A check of the gun's serial number indicated that the firearm was stolen. *Id*. Based on this conduct and prior felony state-court convictions, a grand jury charged Mitchell with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). R. 1 (Indictment at 1) (Page ID #1). Mitchell pleaded guilty to the charge without a plea agreement.

Following his guilty plea, the Probation Office prepared a Presentence Investigation Report ("PSR"). In calculating Mitchell's offense level for sentencing purposes, the PSR began with a base offense level of 24 because Mitchell committed the instant offense subsequent to sustaining two prior felony convictions for either a crime of violence or a controlled substance offense; added two levels because the firearm at issue was stolen; and subtracted three levels for acceptance of responsibility, leaving a total offense level of 23. R. 19 (PSR ¶¶ 13–22) (Page ID #78). Next, the PSR listed Mitchell's extensive criminal history, which resulted in a criminal history category of VI. *Id*. ¶ 46 (Page ID #88). The total offense level and criminal history

---

[1]The parties do not contest the recited facts in the PSR.

category yielded a guidelines range of 92-to-115 months of imprisonment. *Id*. ¶ 72 (Page ID #93). The PSR also detailed Mitchell's family and personal history, which indicated, among other things, that Mitchell's mother used drugs heavily while she was pregnant with Mitchell; that Mitchell has been diagnosed with depression, bipolar, and Attention Deficit Hyperactivity Disorder; that Mitchell has a history of substance abuse; that Mitchell's "cognitive scores were generally in the low average range of functioning"; and that "[l]ater assessments indicated [an] I.Q. [of] 68, which is in the range of an intellectually disabled person." *Id*. at ¶¶ 57–67 (Page ID #90–92). According to the PSR, Mitchell's mother believes that his intellectual functioning is directly related to her substance abuse during her pregnancy with Mitchell. *Id*. ¶ 67 (Page ID #92). Based largely on his criminal history, the Probation Office recommended a 110-month sentence of imprisonment. R. 20 (Sen'g Rec. at 1–2) (Page ID #97–98).

Prior to sentencing, Mitchell submitted a sentencing memorandum, which asked the district court for "a downward departure" from the guidelines range because of Mitchell's personal history and low intellectual functioning. R. 21 (Sen'g Mem.) (Page ID #102, 105). In support, Mitchell cited a psychological report authored by Dr. Sandra McPherson, Ph.D. Dr. McPherson reviewed Mitchell's records, interviewed Mitchell's mother, and performed psychological testing on Mitchell to determine his intellectual functioning. R. 25-1 (Psych. Rep.) (Page ID #204). Dr. McPherson's testing indicated that Mitchell has an I.Q. score of 70, "plac[ing] him in the borderline range of intelligence." *Id*. at 3 (Page ID #206). Based on her evaluation, Dr. McPherson determined that Mitchell has significant intellectual limitations,

3

which are likely, at least in part, the result of gestational exposure to crack cocaine. *Id*. at 4, 7 (Page ID #207, 210). Mitchell did not contest the PSR's guidelines range calculation in his sentencing memorandum.

At the sentencing hearing, Mitchell requested a downward variance based on his low intellectual functioning and personal history. During the hearing, Mitchell's mother addressed the court and explained that she believes that the root of her son's criminal behavior is her drug use during her pregnancy with Mitchell. R. 33 (Sen'g Hr'g at 7) (Page ID #158). In addition, Mitchell's counsel argued emphatically that Mitchell's intellectual functioning and lack of real psychological treatment for his mental conditions established that a downward variance from the guidelines range was appropriate. The district court recessed during the sentencing hearing so that he could review the Probation Office's files relating to "the opportunities the defendant has had for treatment," among other things. *Id*. at 36–38 (Page ID #187–89).

Before announcing the sentence, the district court noted that he reviewed carefully the PSR, the sentencing memorandum, and Dr. McPherson's psychological report. *Id*. at 39 (Page ID #190). The court also acknowledged Mitchell's mental and emotional issues, including his depression, bipolar, and Attention Deficit Hyperactivity Disorder, and his low I.Q. scores. *Id*. at 41–42 (Page ID #192–93). Furthermore, the district court referenced Mitchell's "deprived upbringing," and the cognitive deficits that resulted from his mother's prior drug use. *Id*. at 43–44 (Page ID #194–95). The court found that Mitchell's "cognitive impairments . . . are certainly important for the court to note and certainly have some bearing" on Mitchell's past conduct. *Id*.

4

at 44 (Page ID #195). However, the district court denied Mitchell's motion for a downward variance. In doing so, the court relied primarily on the fact that past referrals for psychiatric and other help did little to change Mitchell's behavior, that Mitchell clearly knows right from wrong, and that Mitchell has a long criminal history, which includes a substantial number of violent offenses. *Id.* at 44–45 (Page ID #195–96). The district court then sentenced Mitchell to 100 months of imprisonment. *Id.* at 46 (Page ID #197).

This appeal followed.

## ANALYSIS

On appeal, Mitchell argues that the district court's sentence is substantively unreasonable because the sentence fails adequately to account for Mitchell's low intellectual functioning. We review the reasonableness of a district court's sentencing decisions for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 41 (2007). "Substantive unreasonableness focuses on the length and type of the sentence and will be found when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Cooper*, 739 F.3d 873, 883 (6th Cir. 2014) (quoting *United States v. Camacho–Arellano*, 614 F.3d 244, 247 (6th Cir. 2010)). "The essence of a substantive-reasonableness claim is whether the length of the sentence is 'greater than necessary' to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)." *United States v. Tristan–Madrigal*, 601 F.3d 629, 632–33 (6th Cir. 2010). When reviewing a sentence for substantive reasonableness, we "take into account the totality of the

circumstances." *Gall*, 552 U.S. at 51. We apply a presumption of reasonableness to a sentence selected from within the properly calculated guidelines range. *Rita v. United States*, 551 U.S. 338, 347 (2007); *Tristan–Madrigal*, 601 F.3d at 633. Moreover, "the mere fact that we might have reasonably concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *United States v. Zobel*, 696 F.3d 558, 569 (6th Cir. 2012) (internal quotation marks omitted).

Here, Mitchell argues that the district court abused its discretion because it "placed an unreasonable amount of weight on the details of the crime for which Mr. Mitchell was indicted and his criminal history while failing to understand the intricacies of individuals diagnosed with intellectual disability." Appellant Br. at 12. In particular, Mitchell claims that the district court "minimized" Mitchell's intellectual deficiencies by equating ability to commit criminal acts with intellectual knowledge and failed to appreciate that a cognitive deficiency makes a defendant less culpable for his criminal acts. *Id*. at 12–14. Mitchell argues that we should remand for resentencing so that the district court can properly weigh the mitigating effect of his low intellectual functioning.

We disagree. When a court "weighs all pertinent factors, a defendant clearly bears a much greater burden in arguing that the court has given an unreasonable amount of weight to any particular one." *Zobel*, 696 F.3d at 571 (internal quotation marks omitted). Mitchell fails to meet this burden. At the sentencing hearing, the district court appropriately weighed all of the § 3553(a) sentencing factors. Relevant here, the district court discussed at length Mitchell's low

intellectual functioning, his "deprived upbringing," and his mental and emotional issues, which were at least partially the result of his mother's prior drug use. R. 33 (Sen'g Hr'g at 41–44) (Page ID #192–95). The court found that Mitchell's cognitive deficits were an important factor in his sentencing determination because they "certainly have some bearing" on Mitchell's past conduct. *Id*. at 44 (Page ID #195). Indeed, the district court spent significant time during the sentencing hearing discussing Mitchell's arguments for a downward variance, even recessing the hearing so he could review additional materials relating to Mitchell's prior conditions of community control and opportunities for treatment. *Id*. at 36–38 (Page ID #187–89). Thus, the district court unquestionably weighed Mitchell's intellectual functioning when determining his sentence, which ended up below the Probation Office's recommended sentence. *Id*. at 46 (Page ID #197).

The district court ultimately determined, however, that the balance of other factors weighed towards a sentence within the guidelines range. In particular, the court noted that prior opportunities for treatment were ineffective to curb Mitchell's criminal behavior. *Id*. at 44–45 (Page ID #195–96). The district court further found that Mitchell's "substantial number of violent offenses . . . place[d] him at a high risk to re-offend." *Id*. at 45 (Page ID #196). Considering these factors was not only proper, but also statutorily required. *See* 18 U.S.C. § 3553(a). And, based on these findings, the district court determined that Mitchell's low intellectual functioning was "overborne" by the need to protect the public. *Id*. at 46 (Page ID #197). Contrary to Mitchell's argument on appeal, this determination does not indicate that the

district court improperly "minimized" Mitchell's intellectual deficiencies; rather, it indicates that, even with Mitchell's low intellectual capacity, his extensive criminal history of violent behavior weighed towards a sentence within the guidelines range. Because the district court is in a better position to weigh these factors, this determination was not an abuse of discretion. *See United States v. Adkins*, 729 F.3d 559, 571–72 (6th Cir. 2013) (district court did not abuse its discretion by finding aggravating factors outweighed factors "suggest[ing] that the Defendant could be sufficiently punished by a somewhat lesser sentence"); *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008) (sentence not substantively unreasonable when the district court weighed heavily the need to deter a defendant with an extensive history of drug trafficking).

**CONCLUSION**

For the foregoing reasons, we **AFFIRM** the district court's sentence.