NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0439n.06

No. 16-2529

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

|                                   |     |
|-----------------------------------|-----|
| UNITED STATES OF AMERICA,         | )   |
|                                   | )   |
| Plaintiff-Appellee,               | )   |
|                                   | )   |
| v.                                | )   |
|                                   | )   |
| KEITH VONTA HOPSKIN,              | )   |
|                                   | )   |
| Defendant-Appellant.              | )   |
|                                   | )   |

**FILED**
Jul 26, 2017
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN

BEFORE: SUTTON, McKEAGUE, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. Keith Hopskin argues that committing second-degree murder in Michigan is not a "crime of violence." He therefore contends that the district court should not have sentenced him as a career offender. We disagree and affirm.

I.

No one disputes that Hopskin committed the three crimes relevant here. In 1999, while conducting a routine check on an Amtrak train in Albuquerque, DEA officers noticed Hopskin sitting under a bag that smelled strongly of fruit. They suspected the odor was masking the smell of drugs. And they were right. Hopskin pled guilty to possessing more than five hundred grams of cocaine with the intent to distribute it, and a federal district court in New Mexico sentenced him to thirty months in prison. Then, in 2000, detectives from the Grand Rapids Police

Department solved the murder of Yancy Gray, who went missing two years before. As it turned out, Hopskin and two others had beaten Gray to death and buried him. Hopskin pled guilty to second-degree murder, and a Michigan state court gave him between twelve and thirty-seven years in prison. He was paroled in 2012, and in 2016, he once again pled guilty to possessing over five hundred grams of cocaine that he intended to distribute. A federal district court in Michigan sentenced him to twelve years in prison, the term he is now serving.

The sentencing guidelines recommend higher sentences for defendants who qualify as career offenders. A defendant qualifies if he was "at least eighteen years old at the time [he] committed the instant offense" (which Hopskin was), if the offense is "a felony that is either a crime of violence or a controlled substance offense" (which this one is), and if he "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). The district court found that Hopskin is a career offender based on his 1999 drug conviction and his 2001 conviction for second-degree murder.

Hopskin agrees that the drug conviction counts. Appellant Br. 10. But he disagrees that the murder conviction does. On that ground he appeals the district court's judgment.

II.

Whether Hopskin qualifies as a career offender turns on whether a second-degree murder committed in Michigan qualifies as a crime of violence. Both are legal questions that we review de novo. *See United States v. Cooper*, 739 F.3d 873, 877 (6th Cir. 2014).

Here our review begins and ends with the guidelines. But which guidelines, exactly? Hopskin committed the instant offense in 2015, and the district court sentenced him in 2016. Ordinarily, a court must apply the guidelines in effect at sentencing—here, the Supplement to the 2015 guidelines, issued post-offense but pre-sentencing. U.S.S.G. § 1B1.11(a). That being said,

if the Sentencing Commission issues new guidelines after someone commits a crime, and if those new guidelines put him in a higher sentencing range, a court must apply the ones in effect when he committed the crime. *See id*. § 1B1.11(b)(1); *United States v. Davis*, 397 F.3d 340, 346-48 (6th Cir. 2005).

In this case, however, old and new agree. Yes, the guidelines have changed with age: The version in effect at Hopskin's sentencing lists murder as a crime of violence in the career-offender guideline, whereas the version in effect when he committed the instant offense does not. *Compare* U.S.S.G. § 4B1.2(a)(2) (Supp. to 2015), *with* U.S.S.G. § 4B1.2(a)(2) (2014). Yet the *commentary* to the older version does say that murder counts. U.S.S.G. § 4B1.2 cmt. n.1 (2014). And this commentary is as authoritative as any guideline. *See Stinson v. United States*, 508 U.S. 36, 47 (1993); *United States v. Arnold*, 58 F.3d 1117, 1124 (6th Cir. 1995); *see also Beckles v. United States*, 137 S. Ct. 886, 897 (2017) (Ginsburg, J., concurring in the judgment) ("Harmonious with federal law and the text of § 4B1.2(a), that commentary [i]s authoritative." (internal quotation marks omitted)).

This commentary therefore supplements the offenses enumerated in Section 4B1.2(a)(2). Indeed, before they became part of the guideline itself in August 2016, we "treated the crimes 'specifically enumerated in Application Note 1' as separate offenses" constituting crimes of violence. *United States v. Kennedy*, No. 15-1456, 2017 WL 1078552, at *8 (6th Cir. Mar. 22, 2017) (quoting *United States v. Rodriguez*, 664 F.3d 1032, 1036 (6th Cir. 2011)). And the Sentencing Commission wanted courts to treat the commentary that way. U.S.S.G. Supp. to App. C, amend. 798 at 129 (2016) ("For easier application, all enumerated offenses are now included in the guideline at § 4B1.2; prior to th[is] amendment, the list was set forth in *both* § 4B1.2(a)(2) *and* the commentary at Application Note 1." (emphasis added)).

As a result, it does not matter whether we apply the old or the new; murder is a crime of violence either way. Which is to say: The newer guidelines increase neither Hopskin's offender status nor his punishment. So we apply the newer guidelines. *Davis*, 397 F.3d at 346-47.

Granted, we have also said that "a specific offense [does not] automatically qualify as a crime of violence just because it has the same name as one of the enumerated offenses." *United States v. Rede-Mendez*, 680 F.3d 552, 556 (6th Cir. 2012). Thus, we still must look to the "generic definition" of murder—by "surveying how the crime is described across jurisdictions" and in sources like the Model Penal Code—and then "compare the scope" of Michigan's statute to that definition. *Cooper*, 739 F.3d at 879 (quoting *Rede-Mendez*, 680 F.3d at 556); *see also Taylor v. United States*, 495 U.S. 575, 588-89 & n.8 (1990). If the statute "criminalizes the same or a narrower set of conduct as generic" murder, then a violation of the statute will "qualify as a crime of violence under the enumerated-offense prong." *Cooper*, 739 F.3d at 879-80.

Generic murder includes unintentional (*e.g.*, reckless) types of murder. The Model Penal Code "provides that criminal homicide constitutes murder when," among other things, "it is committed recklessly under circumstances manifesting extreme indifference to the value of human life." Model Penal Code § 210.2(1)(b) (Am. Law Inst. 2016). Further back, *Black's Law Dictionary* defined "murder" as "[t]he killing of a human being with malice aforethought," and "depraved-heart murder" as "[a] murder resulting from an act so reckless and careless of the safety of others that it demonstrates the perpetrator's complete lack of regard for human life." Black's Law Dictionary 1176 (10th ed. 2014). And today, no fewer than "thirty states define a form of unintentional murder involving" indifference, depraved heart, or recklessness. *United States v. Marrero*, 743 F.3d 389, 400 n.4 (3d Cir. 2014) (collecting statutes). Michigan's second-degree-murder statute is in line, catching these types of murder (along with more

"intentional" types). *See* Mich. Comp. Laws Ann. §§ 750.316-.317; *Keys v. Booker*, 798 F.3d 442, 450 (6th Cir. 2015) ("The 'malice' required to prove murder requires . . . [at least] wanton and willful disregard that the natural tendency of the defendant's behavior is to cause death or great bodily harm." (quoting *People v. Nowack*, 614 N.W.2d 78, 85 (Mich. 2000)). Thus, second-degree murder in Michigan falls well inside the generic definition of murder.

That resolves this case. When he went in for sentencing, Hopskin brought along a prior drug conviction and a prior murder conviction. He does not contest that possessing cocaine is a "controlled substance offense." Appellant Br. 10. As we have seen, second-degree murder committed in Michigan is in fact "murder." *Cf. Wajda v. Holder*, 727 F.3d 457, 464 (6th Cir. 2013) (approving of the BIA's conclusion that a Michigan conviction for second-degree murder is "a categorical match to the generic definition of murder" in the INA); *United States v. Wood*, 209 F.3d 847, 850 (6th Cir. 2000) ("The [career-offender guideline] do[es] not distinguish between first, second, or third degrees of offenses."). And lest there be any doubt, beating someone to death and possessing five hundred grams of cocaine are both felonies. *See* Mich. Comp. Laws Ann. §§ 750.7, .317; 21 U.S.C. § 841(b)(1)(B)(ii)(II); 18 U.S.C. § 3559(a). That makes "two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). Since defendants with two of those qualify as career offenders, the district court properly considered Hopskin a career offender.

\* \* \*

We affirm the district court's judgment.