564 S.E.2d 351

**The STATE, Respondent,**

v.

**Jacinto Antonio BULL, Appellant.**

No. 3481.

Court of Appeals of South Carolina.

Submitted March 5, 2002.
Decided April 22, 2002.
Rehearing Denied June 19, 2002.

Paul V. Cannarella, of Hartsville, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Attorney General Charles H. Richardson, Assistant Attorney General Melody J. Brown, all of Columbia; and Solicitor Jay E. Hodge, Jr., of Darlington, for respondent.

HEARN, C.J.

Jacinto Antonio Bull was charged with felony driving under the influence (DUI), reckless homicide, driving under suspension (DUS), and two counts of assault and battery of a high and aggravated nature (ABHAN). The jury found Bull guilty of felony DUI, reckless homicide, DUS, and one count of ABHAN. Bull appeals arguing the trial court erred in admitting evidence of his blood alcohol test results. We affirm.

## FACTS

On the evening of April 5, 1998, a witness driving along Highway 15 toward Hartsville observed Bull's Subaru approaching at a high speed and passing him. The witness stated Bull almost collided with him and he had to use defensive driving to avoid a collision. After Bull passed him, the witness saw Bull proceed at a high speed, swerve to the left, and turn onto Rolling Road. A few minutes later the witness turned onto Rolling Road and observed an Explorer lying in the bottom of a ditch and Bull's Subaru in the brush.

Bull's Subaru collided with an Explorer driven by Michael Redding at the intersection of Rolling Road and Home Avenue. Redding died as a result of injuries from the accident and his wife sustained injuries to her head, neck, sternum, leg, and knee. Additionally, Bull's passenger broke his arm.

Bull was also seriously injured in the accident and was taken to the hospital. Investigator Gregory Chandler went to the hospital and attempted to interview Bull. Chandler testified Bull nodded in the affirmative when asked whether he had been driving and drinking. Chandler then placed Bull under arrest for DUI and asked Bull to submit a blood sample. At this point, Bull was unconscious and the emergency room nurse drew his blood for testing. Bull's blood was drawn at 11:45 p.m., placed in a vial, labeled, and given to Officer Chandler. The blood sample was sent to SLED for testing, and the result of the test indicated a 0.168 percent blood alcohol level.

At trial, Bull moved to suppress the blood test arguing the State failed to comply with S.C.Code Ann. § 56–5–2950(g) (1991)[1] which requires the State to provide a defendant with a written report prior to trial indicating the time the blood test was performed. The State provided Bull with a report listing the time and date that his blood was drawn, but the report did not contain the date on which the analysis of the blood was conducted. The State offered to produce the notes of Dr. Stroman who conducted the blood test. The notes contained the precise time of testing and the court recessed to allow the defense an opportunity to review Stroman's notes. Following the recess, Bull renewed his motion to suppress the evidence based on the State's failure to strictly comply with section 56–5–2950.

After Stroman's in camera testimony, the trial court denied Bull's request to suppress and found that the State substantially complied with section 56–5–2950 by providing the defense with the time and date the blood was drawn. The trial court ruled that for purposes of complying with section 56–5–2950 testing began when the blood was drawn, and that by providing that information to Bull before trial, the State satisfied the requirements of the statute.

1. Subsequent amendments to this statute have not altered the language of this provision. *See* S.C.Code Ann. § 56–5–2950(d) (Supp.2001).

The jury found Bull guilty of felony DUI, reckless homicide, DUS, and one count of ABHAN. This appeal followed.

## STANDARD OF REVIEW

In criminal cases, the appellate court reviews errors of law only. *State v. Wilson*, 345 S.C. 1, 5–6, 545 S.E.2d 827, 829 (2001). The trial court has considerable discretion in ruling on the admissibility of evidence. *State v. Hughey*, 339 S.C. 439, 454, 529 S.E.2d 721, 728–729 (2000). "On appeal, the trial court's ruling will not be disturbed absent a prejudicial abuse of discretion amounting to an error of law." *State v. Sheldon*, 344 S.C. 340, 342, 543 S.E.2d 585, 585–586 (Ct.App. 2001).

## DISCUSSION

Bull contends the blood test results should have been excluded because the written report provided to him prior to trial failed to indicate the time the test was performed. We disagree.

S.C.Code Ann. § 56–5–2950(g) (1991) provided:

Any person required to submit to tests by the arresting officer must be provided with a written report including the time of arrest, the time of the tests, and the results of the tests, prior to any trial or other proceedings in which the results of the tests are used as evidence. Any person administering a test at the request of the defendant shall record in writing the time, method, and results of the test and promptly furnish a copy to the arresting officer prior to any trial or other proceedings in which the results of the test are used as evidence.

"The primary rule of statutory construction is that the Court must ascertain the intention of the legislature." *Kerr v. State*, 345 S.C. 183, 188, 547 S.E.2d 494, 496 (2001). In interpreting a statute, "the court must give the words their plain and ordinary meaning without resorting to a tortured construction which limits or expands the statute's operation." *State v. Dickerson*, 339 S.C. 194, 199, 528 S.E.2d 675, 677 (Ct.App.2000). Furthermore, "a statute as-a whole must receive a practical, reasonable, and fair interpretation conso-nant with the purpose, design, and policy of the lawmakers." *State v. Baker*, 310 S.C. 510, 512, 427 S.E.2d 670, 672 (1993).

Based on our review of section 56–5–2950 as a whole, we find the purpose of the statute is to provide for reciprocal discovery between the State and a defendant as to the time and results of tests conducted to determine the presence of alcohol or drugs in the operator of a motor vehicle. Moreover, it appears from the second sentence of section 56–5–2950 that the time the legislature was concerned with was the time of administration of the test to the defendant, not subsequent lab work.[2] The timing of the administration of these tests is crucial because of the ephemeral nature of blood intoxication levels. In our view, testing for purposes of this section begins when the blood or other sample is taken. Therefore, we find the trial court properly concluded the State complied with the statute by providing Bull with the time the blood was drawn. Accordingly, the trial court did not err in allowing testimony about Bull's blood alcohol test.

**AFFIRMED.**

CONNOR and SHULER, JJ., concur.

---

**2.** New Jersey courts also focus on the time of administration. *See State v. Ford,* 240 N.J.Super. 44, 572 A.2d 640, 645 (1990) ("Obviously the time of administration of the tests and the results and all reports and relevant documents signed by defendant or pertaining to his condition of sobriety including blood and urine tests must be supplied.").