RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 10a0012p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.                                                              No. 08-5839

ROBBY LEE MCFALLS,
                        *Defendant-Appellant.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 05-00079-1—Robert L. Echols, District Judge.

Argued: December 1, 2009

Decided and Filed: January 28, 2010

Before: GUY, ROGERS, and GRIFFIN, Circuit Judges.

———————————

**COUNSEL**

———————————

**ARGUED:** C. Douglas Thoresen, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant. Jimmie Lynn Ramsaur, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee. **ON BRIEF:** C. Douglas Thoresen, Michael C. Holley, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant. Jimmie Lynn Ramsaur, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee.

———————————

**OPINION**

———————————

ROGERS, Circuit Judge. Robby McFalls appeals his classification as a career offender under U.S.S.G. § 4B1.1, based on his prior convictions in South Carolina for four counts of second degree burglary of a dwelling and one count of assault and battery of a high and aggravated nature. McFalls argues on appeal that his four convictions for burglary, sentenced on the same day, should be counted as a single sentence for criminal history

purposes. He also argues that conviction under South Carolina's second degree burglary statute does not categorically qualify as a crime of violence because the statute includes crimes as far as 200 feet from the home. Finally, he argues that South Carolina's common-law crime of assault and battery of a high and aggravated nature does not categorically qualify as a crime of violence because the crime includes some actions taken recklessly or negligently rather than intentionally. Each of these three arguments has merit, and together they require a remand for further proceedings.

I.

In 1993 Robby McFalls committed a series of burglaries in South Carolina. After a single arrest, McFalls pleaded guilty to four counts of second degree burglary and was sentenced on November 11, 2005. Although two of the burglaries were indicted as first degree burglary, those charges were reduced to second degree burglary. The indictments for second degree burglary stated that they were for burglary in the second degree (dwelling) and that McFalls "willfully and unlawfully" entered the dwellings of two separate individuals "without consent and with the intent to commit a crime therein."

In 1996, McFalls pleaded guilty to an additional indictment for assault and battery of a high and aggravated nature (ABHAN), a South Carolina common-law crime. The indictment alleged:

> That Robby Lee McFalls did in Spartenburg [sic] County on or about July 7, 1996 commit an assault and battery upon the victim, Christopher Self, constituting an unlawful act of violent injury to the person of the said victim, accompanied by circumstances of aggravation, to wit: By striking the victim about the face with an unknown object, in that the victim required medical treatment.

McFalls was sentenced to eight years for this offense, but the sentence was suspended and McFalls was placed on three years' probation.

In 2003, McFalls committed a series of offenses, including two robberies for which he is currently serving a 25-year sentence in state prison, and the bank robbery that is the subject of this appeal. On June 26, 2006, McFalls pleaded guilty to the bank robbery and to using a gun during that robbery, in violation of 18 U.S.C. § 924(c). McFalls was sentenced on November 1, 2007, the day the 2007 version of the Sentencing Guidelines

Manual went into effect.  At his sentencing hearing for the bank robbery and weapons charge, McFalls argued that although he had a lengthy criminal history, he did not qualify as a career offender for sentencing purposes because he did not have two qualifying convictions for crimes of violence, as required by U.S.S.G. § 4B1.1.  McFalls argued that his South Carolina burglary convictions were not burglaries of a dwelling because of the state's expansive definition of "dwelling," but the main focus of his argument before the district court was that he had pleaded guilty to the burglaries with the understanding that South Carolina would classify them as non-violent burglaries.  The district court concluded that McFalls' convictions for second degree burglary were crimes of violence, based on two cases—one from the Sixth Circuit and one from the Fourth Circuit—holding that second degree burglary of a dwelling in South Carolina was a crime of violence.  Because the Presentence Report was prepared based on the 2005 version of the Sentencing Guidelines Manual and McFalls had four convictions for burglary, the district court held that McFalls qualified as a career offender and therefore had a guidelines range of 188 to 235 months for the bank robbery, plus an additional 84-month sentence for using a weapon during that robbery, to be served consecutively to the bank robbery charge.  Without the career-offender enhancement, the bank-robbery charge would have had a guidelines range of 77 to 96 months, in addition to the 84 months for the weapons charge.  The Presentence Report also listed the ABHAN conviction as a crime of violence for sentencing-enhancement purposes, and McFalls did not object to that classification.  The district court sentenced McFalls to 272 months' imprisonment, the lowest possible sentence within the guidelines range because of McFalls' classification as a career offender.  McFalls filed this timely appeal.

II.

McFalls' four prior convictions for violating South Carolina's second degree burglary statute should have been counted as a single sentence under the Sentencing Guidelines because the four convictions were sentenced on the same day and the four offenses were not separated by an intervening arrest.  According to the Sentencing Guidelines, "[t]he court shall use the Guidelines Manual in effect on the date that the defendant is sentenced."  U.S.S.G. § 1B1.11(a).  The 2007 Sentencing Guidelines Manual became effective November 1, 2007, the day McFalls was sentenced for the bank robbery

and the associated weapons charge. For criminal history purposes, the 2007 Guidelines Manual states,

> If the defendant has multiple prior sentences, determine whether those sentences are counted separately or as a single sentence. Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (*i.e.*, the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; *or (B) the sentences were imposed on the same day*. Count any prior sentence covered by (A) or (B) as a single sentence.

U.S.S.G. § 4A1.2(a)(2) (emphasis added). Because McFalls' four burglary convictions were not separated by an intervening arrest and were sentenced on the same day, the Guidelines count them as a single sentence for criminal history purposes.

The Government does not contest that McFalls' burglary convictions should count as a single sentence under the 2007 Guidelines. Rather, the Government argues that because McFalls failed to object to sentencing under the 2005 Guidelines in the district court, he must show that it was plain error to use the 2005 Guidelines. The Government argues that no plain error was shown because the error did not affect defendant's substantial rights, as required for plain error reversal under our precedents. *E.g.*, *United States v. Davis*, 397 F.3d 340, 346 (6th Cir. 2005). The requirement that the error affect the defendant's substantial rights "usually means that the error must have affected the outcome of the district court proceedings." *Id.* (quoting *United States v. Cotton*, 535 U.S. 625, 632 (2002)). As the Government sees it, the use of the 2007 Guidelines Manual would not have changed the final determination of McFalls' criminal history category and offense level, because McFalls would still have one burglary conviction and one ABHAN conviction, both of which are crimes of violence for sentencing-enhancement purposes. The argument thus turns on the resolution of the two remaining issues on this appeal, concerning whether the burglary and the ABHAN offenses may be counted as crimes of violence for career offender purposes.

III.

McFalls' prior sentence for second degree burglary of a dwelling does not qualify categorically as a crime of violence for purposes of U.S.S.G. § 4B1.1. U.S.S.G. § 4B1.2 defines "crime of violence" as follows:

> [A]ny offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

Thus, the crime of violence definition can be met by satisfying one of three tests: (1) by qualifying as a "burglary of a dwelling," one of the specifically enumerated crimes of violence; (2) by having as an element the use, attempted use, or threatened use of physical force against another; (3) or by presenting a serious potential risk of physical injury to another. *See United States v. Wilson*, 168 F.3d 916, 927 (6th Cir. 1999). South Carolina's second degree burglary statute does not meet these three tests because of its broad definition of "dwelling," which extends to uninhabitable structures as far as 200 yards from a dwelling house.

A. Generic "Burglary of a Dwelling"

First, the South Carolina statute's broad definition of "dwelling" means that the crime encompasses more conduct than the generic definition of "burglary of a dwelling," and thus does not qualify categorically as a "burglary of a dwelling" for sentencing-enhancement purposes. McFalls pleaded guilty to violating S.C. Code Ann. § 16-10-312(A), which states that a "person is guilty of burglary in the second degree if the person enters a dwelling without consent and with intent to commit a crime therein." For purposes of the burglary statute, "dwelling" has two meanings. "'Dwelling' means its definition found in § 16-11-10 and also means the living quarters of a building which is normally used for sleeping, living, or lodging by a person." S.C. Code Ann. § 16-11-310(2). Section 16-11-10 contains the more expansive definition:

> With respect to the crimes of burglary and arson and to all criminal offenses which are constituted or aggravated by being committed in a dwelling house,

> any house, outhouse, apartment, building, erection, shed or box in which there sleeps a proprietor, tenant, watchman, clerk, laborer or person who lodges there with a view to the protection of property shall be deemed a dwelling house, and of such a dwelling house or of any other dwelling house all houses, outhouses, buildings, sheds and erections which are within two hundred yards of it and are appurtenant to it or to the same establishment of which it is an appurtenance shall be deemed parcels.

S.C. Code Ann. § 16-11-10.     This broad definition of dwelling, including all "houses, outhouses, buildings, sheds, and erections which are within two hundred yards" of a dwelling house, is broader than the definition of dwelling in generic burglary statutes. The generic definition of burglary of a dwelling cannot fairly extend to intrusions into sheds two hundred yards from a residence. In *Taylor v. United States*, the Supreme Court held that in determining whether the crimes of violence enumerated in a sentencing-enhancement include particular state-law crimes, a sentencing court should define the enumerated crimes of violence according to the generic sense in which they are used in the criminal codes of most states. 495 U.S. 575, 598 (1990). In ascertaining the meaning of "burglary" for sentencing-enhancement purposes under the Armed Career Criminal Act, the Court stated that although "exact formulations vary, the generic, contemporary meaning of burglary contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime," and noted that this definition approximated the definition found in the Model Penal Code. *Id.* at 598 & n.8. Section 4B1.2 of the Sentencing Guidelines differs from the Armed Career Criminal Act by listing burglary of a dwelling, rather than burglary, as a crime of violence. The Model Penal Code does not contain a separate entry for burglary of a dwelling, but Black's Law Dictionary provides a less expansive definition of dwelling house than the South Carolina statute. It states: "*Criminal Law.* A building, a part of a building, a tent, a mobile home, or another enclosed space that is used or intended for use as a human habitation. The term has referred to connected buildings in the same curtilage, but now typically includes only the structures connected either directly with the house or by an enclosed passageway." Black's Law Dictionary (8th ed. 2004). South Carolina's definition of dwelling, which includes any structures—whether intended for human habitation or not—within 200 yards of a dwelling house, is more expansive than generic burglary of a dwelling.

The "required for human habitation" element is supported by at least two other circuit courts, which have relied on the Black's Law Dictionary definition of dwelling to define the generic elements of burglary of a dwelling for sentencing-enhancement purposes. Although each of those courts ultimately concluded that the defendant had committed burglary of a dwelling, the courts did so only after determining that the structures were used for purposes of habitation. In *United States v. McClenton*, the Third Circuit held that burglary of a hotel room was a crime of violence, because a "hotel guest room is intended for use as human habitation, albeit, in most circumstances, on a transient or temporary basis." 53 F.3d 584, 587 (3rd Cir. 1995). Similarly, the Eighth Circuit held that burglary of structures used as "weekend fishing retreats" was a crime of violence by finding that those retreats met the Black's Law Definition of dwelling. *United States v. Graham*, 982 F.2d 315, 316 (8th Cir. 1992). In a Fifth Circuit case, the Government also endorsed the habitation element of the generic definition of dwelling. The Government stated that a sentencing court "must give effect to the ordinary meaning of 'dwelling' as a *place of habitation* without limiting the types of structures that can constitute dwellings," and argued that the "use of any structure *as a habitation* makes it equivalent to a building or home within *Taylor*'s generic definition of burglary." *United States v. Murillo-Lopez*, 444 F.3d 337, 342 (5th Cir. 2006) (emphasis added).

The requirement of habitation for generic burglary of a dwelling applies regardless of whether generic burglary of a dwelling is broader or narrower than generic burglary. The Fifth Circuit in *Murillo-Lopez* read "burglary of a dwelling" as broader than burglary, in that it extended to tents or vessels used for human habitation. 444 F.3d at 345. We have read "burglary of a dwelling" as narrower (or at least no broader) than burglary. In *United States v. Wilson*, we held that a burglary statute that included entering or remaining in a building, house trailer, water craft, aircraft, railroad car, and other structures but specifically omitted residential burglary did not qualify categorically as a crime of violence under U.S.S.G. § 4B2.1. 168 F.3d 916, 927 (6th Cir. 1999). We noted that the Sentencing Commission had chosen to use burglary of a dwelling rather than mere burglary, had declined to adopt a proposal to include generic burglary as a crime of violence, and had also declined to adopt a proposal to expand burglary of a dwelling to include "'any adjacent outbuilding considered

part of the dwelling.'" *Id.* at 928 (quoting 58 Fed. Reg. 67533 (proposed December 21, 1993)).  Under either reading, however, there must be an intrusion on a place of habitation.

Intrusions into uninhabitable structures two hundred yards from the place of habitation thus do not constitute generic burglary of a dwelling.  This conclusion is strongly supported, if not flatly compelled, by the Supreme Court's decision in *James v. United States*, 550 U.S. 192 (2007).  The Court held there that a Florida burglary of a dwelling statute that included a narrowly defined curtilage area around the house fell outside the generic definition of burglary for purposes of the Armed Career Criminal Act.  The Court stated, "We agree that the inclusion of curtilage takes Florida's underlying offense of burglary outside the definition of 'generic burglary' set forth in *Taylor*, which requires an unlawful entry into, or remaining in, 'a *building or structure*.'" *Id.* at 212 (quoting *Taylor*, 495 U.S. at 598) (emphasis in original).  Prior to the *James* decision, the Florida Supreme Court had defined curtilage narrowly, including only those areas inside "some form of an enclosure in order for the area surrounding a residence to be considered part of the 'curtilage' as referred to in the burglary statute." *State v. Hamilton*, 660 So.2d 1038, 1044 (Fla. 1995).  And in *United States v. Pluta*, 144 F.3d 968, 975 (6th Cir. 1998), we held that Florida's burglary statute was non-generic in part because the term "structure" was defined to include "the curtilage thereof."

### B.  Use of Physical Force as an Element of the Crime

Second, South Carolina second degree burglary plainly does not have as an element the use, attempted use, or threatened use of physical force against another.  The government does not so argue.

### C.  Offense Involving Conduct that Presents a Serious Potential Risk of Physical Injury

Third, South Carolina second degree burglary does not qualify categorically as a crime of violence by involving conduct that "presents a serious potential risk of physical injury to another."  The crime fails to satisfy the residual clause because it does not present the same degree of risk as generic burglary of a dwelling.  An offense presents a serious potential risk of physical injury to another for sentencing-enhancement purposes "if it is 'similar in kind as well as in degree of risk posed,' to the enumerated offenses." *United*

*States v. Mosley*, 575 F.3d 603, 606 (6th Cir. 2009) (quoting *United States v. Begay*, 128 S.Ct. 1581, 1585 (2008)). Although the kind of risk posed by second degree burglary in South Carolina is similar to the kind of risk posed by a generic burglary of a dwelling, the risk differs in terms of degree. "The main risk of burglary arises not from the simple act of wrongfully entering onto another's property, but rather from the possibility of a face-to-face confrontation between the burglar and a third party—whether an occupant, a police officer, or a bystander—who comes to investigate." *James*, 550 U.S. at 203. That is, the *James* Court elaborated, the risk arises "from the possibility that an innocent person might appear while the crime is in progress." *Id.* Such risk is of course high in the case of intrusion into the actual place of habitation—or an attempt at such intrusion, as in *James*—but obviously much lower in the case of uninhabitable sheds up to 200 yards from a generic dwelling. Thus, South Carolina second degree burglary of a dwelling does not, under the categorical approach, present the same degree of risk as generic burglary of a dwelling, and the residual clause of the Guidelines career offender definition of violent crime does not apply.

## IV. Looking at the Indictments

The charging documents for McFalls' burglary convictions, moreover, do not contain enough to make the burglary conviction a crime of violence for Guidelines career offender purposes. Although a sentencing court "'may generally only look to the statutory definitions of prior offenses, and not to the particular facts underlying those convictions' to determine whether a sentence should be enhanced, . . . in cases where the statutory definition is ambiguous, a court [is permitted to] 'go beyond the mere fact of conviction' and examine the charging papers or jury instructions to determine whether the convicting jury necessarily found all the requisite elements of an offense that would qualify for a federal sentencing enhancement." *United States v. Armstead*, 467 F.3d 943, 947 (6th Cir. 2006) (quoting *Taylor*, 495 U.S. at 600, 602). A sentencing court in that situation may examine "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable record of judicial information." *Shepard v. United States*, 544 U.S. 13, 26 (2005). The question in cases of guilty pleas is whether "the court documents establish that the defendant 'necessarily admitted' the elements of a predicate offense through his plea." *United States v. Medina-Almaguer*, 559 F.3d 420, 422 (6th Cir. 2009).

The Government argues that even if second degree burglary in South Carolina does not categorically qualify as a crime of violence, the "South Carolina indictments, plea agreements, and sentencing documents make clear that the defendant was charged with and sentenced for four offenses involving the burglary of a dwelling." This argument fails, however, because nothing in the indictments indicates the generic use of the word dwelling, rather than dwelling as defined by the statute for which the indictments were made.

Here, the indictments and other documents in the record establish only that McFalls was convicted of second degree burglary. The indictments for second degree burglary come from pre-printed forms. The relevant portion of one of the indictments is titled, "BURGLARY IN THE SECOND DEGREE (DWELLING)," and states that "Robby McFalls did in Spartanburg County on or about February 27, 1993 willfully and unlawfully enter the dwelling of James M. Jennings without consent and with intent to commit a crime therein." Most of that language is boilerplate that is pre-printed on the indictment; the only language specific to the individual case is the name, "Robby McFalls," the county, the date, and the name of the person whose dwelling McFalls unlawfully entered, "James M. Jennings." Although the indictment states that McFalls unlawfully entered a dwelling, the word dwelling is pre-printed onto the generic indictment form for burglary in the second degree. There is nothing in any of the indictments to indicate that they do not incorporate South Carolina's broad definition of dwelling, including uninhabitable buildings, sheds, and other erections up to 200 yards from a residence.

The Government has pointed us to no other relevant *Shepard* documents to show that McFalls admitted to the elements of generic burglary of a dwelling in his guilty pleas. Thus, remand is appropriate to allow the district court to consider whether any *Shepard* documents show that McFalls pleaded guilty to burglarizing any structures that meet the generic definition of dwelling.

## V. Aggravated Assault Conviction

For a different reason, South Carolina's common-law crime of ABHAN is also not categorically a crime of violence. This is because ABHAN applies not only to intentional conduct, but also to reckless conduct. We have squarely held that under the Guidelines definition of "crime of violence" contained in U.S.S.G. § 2L1.2(b)(1)(E), cmt. 1(B)(iii),

which is materially indistinguishable from the definition that we apply today (U.S.S.G. § 4B1.2(a) & cmt. 1), "a crime requiring only recklessness does not qualify." *United States v. Portela*, 469 F.3d 496, 499 (6th Cir. 2006). Other circuits have reached the same conclusion under the indistinguishable words of the Armed Career Criminal Act. *See United States v. Smith*, 544 F.3d 781, 785 (7th Cir. 2008).[1]

In South Carolina law, ABHAN "is the unlawful act of violent injury to another accompanied by circumstances of aggravation." *State v. Fennell*, 531 S.E.2d 512, 517 (S.C. 2000). However, the South Carolina Supreme Court has not "identified any particular mental state the State must prove in order for a defendant to be found guilty of ABHAN." *Id.* at 517. Consistent with this lack of a mental state requirement, South Carolina courts have upheld ABHAN convictions in cases involving injuries resulting from a defendant's reckless driving. *See State v. Bull*, 350 S.C. 58 (S.C. Ct. App. 2002); *State v. Easler*, 322 S.C. 333 (S.C. Ct. App. 1996); *State v. Sussewell*, 146 S.E. 697 (S.C. 1929). Because South Carolina has not defined a particular mental state for ABHAN and South Carolina courts have upheld ABHAN convictions for conduct that was reckless, ABHAN does not meet the requirements for a "crime of violence" under *Portela*.

The Government argues that because Comment 1 to U.S.S.G. § 4B1.2 identifies "aggravated assault" as a crime of violence, ABHAN qualifies categorically as a crime of violence. This argument fails because ABHAN does not involve the same elements as generic aggravated assault. Defining aggravated assault generically is particularly difficult because many states define assault in terms of degrees rather than with the terms simple or aggravated, *see, e.g.*, Ala. Code § 13A-6-20(a), and because some states still retain the common law distinction between assault and battery. *See, e.g.*, W. Va. Code

---

[1] The Seventh Circuit reasoned:

> We must conclude that, after *Begay* [128 S.Ct. at 1581 (2008)], the residual clause [viz., the serious-risk clause] of the ACCA should be interpreted to encompass only 'purposeful' crimes. Therefore, those crimes with a mens rea of negligence or recklessness do not trigger the enhanced penalties mandated by the ACCA. Accordingly, we agree with the Second Circuit [in *United States v. Gray*, 283 F. App'x 871 (2008)] that crimes requiring only a mens rea of recklessness cannot be considered violent felonies under the residual clause of the ACCA.

§ 61-2-9. After surveying these laws, the Model Penal Code concluded that a person should be guilty of aggravated assault if he "(a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon." Model Penal Code § 211.1(2). This definition approximates the definition of "aggravated assault" used by several states that have consolidated the crimes of assault and battery. *See, e.g.*, Miss. Code Ann. § 97-3-7.

Under the Model Penal Code definition, a person is guilty of aggravated assault only when he acts with specific intent, or acts recklessly under circumstances manifesting extreme indifference to the value of human life with malignant recklessness and causes serious bodily injury. Because South Carolina courts have upheld ABHAN convictions in cases involving merely reckless conduct, a conviction for ABHAN does not qualify categorically as a generic aggravated assault. Moreover, circumstances of aggravation that turn simple assault into ABHAN include some that might well not involve a heightened mens rea, such as "infliction of serious bodily injury, great disparity in the ages or physical conditions of the parties, [and] a difference in gender." *Fennell*, 531 S.E.2d at 517.

The Government's final position is that even if ABHAN does not categorically qualify as a crime of violence, the indictment establishes that McFalls committed a crime of violence. This argument fails on the evidence before us in the record, however, because the indictment is silent as to McFalls' mental state and does not otherwise establish that McFalls' conduct was purposeful, knowing, or intentional. The indictment states that McFalls "committed an assault and battery on the victim . . . constituting an unlawful injury to the person of said victim, accompanied by circumstances of aggravation, to wit: By striking the victim about the face with an unknown object, in that the victim required medical treatment." This document does not clearly answer the question of whether McFalls acted purposefully or knowingly in causing the injury, or otherwise acted recklessly under circumstances manifesting extreme indifference to the

value of human life. Thus, the indictment does not establish that McFalls committed a crime of violence for sentencing-enhancement purposes.

VI.

For these reasons, McFalls' case is remanded to the district court for resentencing, following further review of any sources permitted under *Shepard v. United States*, 544 U.S. 13, 26 (2005), to determine whether McFalls' prior convictions were for crimes of violence under the Guidelines.