**UNITED STATES of America,**

v.

**Corey Joseph WEHUNT, Defendant.**

**Case No. 1:16–cr–17–1**

United States District Court,
E.D. Tennessee, Southern Division,
at Chattanooga.

Signed January 24, 2017

Meredith Edwards, US Department of Justice, Chattanooga, TN, for United States of America.

Gianna Maio, Federal Defender Services of Eastern Tennessee, Inc., Chattanooga, TN, for Defendant.

## ORDER

HARRY S. MATTICE, JR., UNITED STATES DISTRICT JUDGE

Before the Court is Defendant's Motion to Withdraw Guilty Plea (Doc. 39). For the reasons stated herein, the Court will **REJECT** the Parties' plea agreement. Accordingly, Defendant's Motion (Doc. 39) is **MOOT**.

## I. BACKGROUND

On February 23, 2016, Defendant was indicted for one count of armed bank rob-

bery, in violation of 18 U.S.C. §§ 2, 2113(a), and 2113(d). (Doc. 9). The United States and the Defendant entered into a plea agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C) on July 14, 2016. (Doc. 27). Therein, the Parties agreed that a sentence of 188 months' imprisonment "is the appropriate disposition of this case," and that "the proposed sentence is based on a Guidelines sentencing range based on the career offender guideline." (*Id.* at 3–4). Defendant's predicate offenses for his agreed upon career offender status include a 2007 Tennessee Aggravated Robbery conviction, and a 2007 Tennessee Reckless Aggravated Assault conviction.[1] (Doc. 41 at 3).

On October 7, 2016, the United States Probation Office ("USPO") released its Presentence Investigation Report ("PSR"). (Doc. 37). Contrary to the Parties' original belief, the PSR stated that, pursuant to *United States v. Cooper,* 739 F.3d 873 (6th Cir. 2014), Reckless Aggravated Assault does not categorically qualify as a crime of violence. (Doc. 37 at 10, 20). Accordingly, the USPO determined that Defendant was not a career offender, and that the resulting Sentencing Guideline range was 84 to 105 months' imprisonment. (*Id.* at 19). Given this finding, Defendant filed a Motion to Withdraw his Guilty plea. (Doc. 39).

Shortly thereafter, the United States filed an objection (Doc. 40) to the PSR, arguing that, pursuant to *Voisine v. United States,* —— U.S. ——, 136 S.Ct. 2272, 195 L.Ed.2d 736 (2016), Tennessee Reckless Aggravated Assault does, in fact, qualify as a predicate offense for career offender purposes, and that Defendant should therefore be sentenced as a career offender. Defendant filed a response in opposition to the Government's objection on November 3, 2016. (Doc. 44). On November 7, 2016, the USPO released a Revised PSR in which it adopted the Government's position that, pursuant to *Voisine,* Reckless Aggravated Assault qualifies as a predicate offense for career offender purposes. (Doc. 45 at 10). Accordingly, the Revised PSR labels Defendant a career offender, with a resulting Sentencing Guideline range of 188 to 235 months' imprisonment. (*Id.* at 19). Defendant subsequently filed an objection (Doc. 47) to the Revised PSR in which he asks the Court to consider his response in opposition (Doc. 44) to the Government's original objection as an objection to the Revised PSR's characterization of Defendant as a career offender.

## II. ANALYSIS

 The sole question before the Court is whether Tennessee Reckless Aggravated Assault (hereinafter "Reckless Aggravated Assault") qualifies as a predicate offense under U.S.S.G. § 4B1.2(a)(1). Defendant argues that Reckless Aggravated Assault does not qualify as a predicate offense for career offender purposes. Specifically, he claims that the *mens rea* of recklessness precludes its inclusion under the "use-of-force" clause, defining a "crime of violence."[2] U.S.S.G. §§ 4B1.1 and 4B1.2(a)(1). In support, Defendant relies primarily on *United States v. McMurray,*

---

1. According to the Government, Defendant was convicted of committing two aggravated assaults in 2007, but pursuant to U.S.S.G. § 4B1.2(c), those convictions only count as one offense for career offender purposes. (Doc. 41 at 3 n.2). Defendant was also previously convicted of committing Aggravated Burglary in 2007. As of August 1, 2016, however, Tennessee Aggravated Burglary no longer qualifies as a predicate offense for career

offender purposes. The Government concedes this point, and relies solely on Defendant's convictions for Aggravated Robbery and Reckless Aggravated Assault to support Defendant's career offender status. (*Id.* at 3–15).

2. Under the career offender enhancement, one can commit a "crime of violence" under either the "enumerated offense," clause or the "use-of-force" clause. *See* U.S.S.G. §§ 4B1.1

653 F.3d 367 (6th Cir. 2011), in which the United States Court of Appeals for the Sixth Circuit analyzed the identically worded "use-of-force" clause in the Armed Career Criminal Act ("ACCA"). The Sixth Circuit ultimately held that "pursuant to *Leocal* and *Portela*, we conclude that the 'use of physical force' clause of the ACCA, § 924(e)(2)(B)(i), requires more than reckless conduct." *Id.* at 374–75; *see also Cooper*, 739 F.3d at 879 ("To its credit, the government concedes that Adams's prior conviction [for Tennessee Aggravated Assault] does not categorically qualify as a crime of violence under either the [use-of-force clause] or the residual [clause], according to our past decisions, because the statute criminalizes reckless conduct.")[3] (internal quotation marks omitted); *McMurray*, 653 F.3d at 375 ("We conclude that the Tennessee crime of aggravated assault is not a 'violent felony' under the 'use of physical force' clause of the ACCA."); *United States v. McFalls*, 592 F.3d 707, 716 (6th Cir. 2010) ("South Carolina's common-law crime of ABHAN is also not categorically a crime of violence. This is because ABHAN applies not only to intentional conduct, but also to reckless conduct. We have squarely held that under the Guidelines definition of 'crime of violence' contained in U.S.S.G. § 2L1.2(b)(1)(E), cmt. 1(B)(iii), which is materially indistinguishable from the definition that we apply today (U.S.S.G. § 4B1.2(a) & cmt. 1), a crime requiring only recklessness does not qualify. Other circuits have reached the same conclusion

under the indistinguishable words of the Armed Career Criminal Act.") (internal quotation marks and citations omitted); *United States v. Portela*, 469 F.3d 496, 499 (6th Cir. 2006) ("We now follow the 'considered dicta' of *Leocal* ... and the reasoning of our two sister circuits to hold that a crime requiring only recklessness does not qualify as a 'crime of violence' under 18 U.S.C. § 16. Because the catchall clause of U.S.S.G. § 2L1.2(b)(1) uses identical language, *Portela's* conviction for reckless vehicular assault is not a 'crime of violence' under that clause, and because it is not, the district court lacked support for its 16–level increase in *Portela's* sentence."); *Cutshaw v. United States*, 2016 WL 3212269 at \*2 (E.D. Tenn. June 7, 2016) ("Two of Petitioner's four predicate offenses were for Class D aggravated assault [i.e., Reckless Aggravated Assault] and felony evading arrest. Neither offense qualifies as a violent felony under the ACCA's use-of-force clause ....").

The Government, however, argues that these binding decisions have been effectively overruled by *Voisine*, — U.S. —, 136 S.Ct. 2272, 195 L.Ed.2d 736. The Court, therefore, must turn to *Voisine* and several lower courts' interpretations thereof in order to resolve the legal question at hand.

### A. *Voisine v. United States*, — U.S. —, 136 S.Ct. 2272, 195 L.Ed.2d 736 (2016)

18 U.S.C. § 922(g)(9) prohibits any person convicted of a "misdemeanor crime of

and 4B1.2(a). Here, the United States only argues that Reckless Aggravated Assault is a "crime of violence" under the "use-of-force" clause. Under binding Sixth Circuit precedent, any argument that Reckless Aggravated Assault falls under the "enumerated offense" clause would be futile. *Cooper*, 739 F.3d at 880 ("In doing so, § 39–13–102 encompasses more conduct than generic aggravated assault, and therefore it does not categorically

qualify as a crime of violence under the enumerated-offense prong.").

3. This, of course, was a Government concession, and not the Court's holding. *Cooper*, 739 F.3d at 882–83 ("In summary, as the government concedes, a felony conviction under § 39–13–102 does not categorically qualify as a crime of violence under U.S.S.G. §§ 4B1.1 and 4B1.2.").

domestic violence" from possessing a firearm. The term "misdemeanor crime of violence" is defined statutorily, in relevant part, as a misdemeanor that "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon."[4] 18 U.S.C. § 921(a)(33)(A)(ii). In *Voisine*, the Supreme Court of the United States considered "whether misdemeanor assault convictions for reckless (as contrasted to knowing or intentional) conduct trigger the statutory firearms ban" found in 18 U.S.C. § 922(g)(9). *Voisine*, 136 S.Ct. at 2276. In finding that reckless conduct could trigger said firearms ban, the Supreme Court relied on statutory text, legislative history, and practical concerns.

First, with regards to statutory text, the Court found that "[n]othing in the word 'use'—which is the only statutory language either party thinks is relevant—indicates that § 922(g)(9) applies exclusively to knowing or intentional domestic assaults." *Id.* at 2278. It further noted that the term "use" means "the act of employing something," and that with such understanding "the force involved in a qualifying assault must be volitional." *Id.* at 2278–79 (internal quotation marks omitted). "But," the Court qualified,

> the word "use" does not demand that the person applying force have the purpose or practical certainty that it will cause harm, as compared with the understanding that it is substantially likely to do so. Or, otherwise said, that word is indifferent as to whether the actor has the mental state of intention, knowledge, or recklessness with respect to the harmful consequences of his volitional conduct.

*Id.* at 2279. Moreover, the Court expressly distinguished *Leocal v. Ashcroft*, 543 U.S.

1, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004), a decision on which the Sixth Circuit relied in *McMurray*. *Id.* at 2279–80 ("And contrary to petitioners' view, nothing in *Leocal v. Ashcroft*, 543 U.S. 1, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004), suggests a different conclusion—*i.e.*, that 'use' marks a dividing line between reckless and knowing conduct ... And indeed, *Leocal* itself recognized the distinction between accidents and recklessness, specifically reserving the issue whether the definition in § 16 embraces reckless conduct, *see* 543 U.S. at 13, 125 S.Ct. 377—as we now hold § 921(a)(33)(A) does."). In short, the Court found that "[a] person who assaults another recklessly 'use[s]' force, no less than one who carries out that same action knowingly or intentionally. The relevant text thus supports prohibiting petitioners, and others with similar criminal records, from possessing firearms." *Id.* at 2280.

As for legislative history, the Court first established that "Congress enacted § 922(g)(9) in 1996 to bar those domestic abusers convicted of garden-variety assault or battery misdemeanors—just like those convicted of felonies—from owning guns." *Id.* It then noted that in 1996, thirty-four states plus the District of Columbia "defined such misdemeanor offenses to include the reckless infliction of bodily harm." *Id.* This made sense, the Court found, because several decades before 1996, the Model Penal Code took the position that recklessness should suffice to establish criminal liability for assault. *Id.* Thus, the Court reasoned, "in linking § 922(g)(9) to [misdemeanor assault and battery statutes], Congress must have known it was sweeping in some persons who had engaged in reckless conduct." *Id.* Moreover, the Court found, if § 922(g)(9)

---

4. The relevant language at issue in this case defines a "crime of violence" as any offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1).

did not apply to recklessly committed assaults, then § 922(g)(9) would be functionally inoperative in thirty-five jurisdictions. *Id.* at 2280–81 (noting that under *Descamps v. United States*, —— U.S. ——, 133 S.Ct. 2276, 186 L.Ed.2d 438 (2013), many state assault and battery laws are indivisible, and thus the inclusion of the *mens rea* of recklessness would render the entire statute inapplicable to § 922(g)(9) if Petitioners' viewpoint were accepted). Accordingly, the Court found that the phrase "use ... of physical force" when "naturally read, encompasses acts of force undertaken recklessly." *Id.* at 2282.

## B. The Parties' Arguments

In light of the Supreme Court's ruling in *Voisine*, the United States claims that *McMurray*, *Cooper*, *McFalls*, and *Portella* have been effectively overruled. (Doc. 41 at 9). Specifically, it argues that the word "use" should be given the same meaning in U.S.S.G. § 4B1.2(a)(1) as the Supreme Court gave it in relation to 18 U.S.C. § 921(a)(33)(A) in *Voisine*. (*Id.* at 10). In addition to the similar statutory language, the United States cites to the common statutory purpose of U.S.S.G. § 4B1.1 and 18 U.S.C. § 922(g)(9), that is, to prevent violence.[5] (*Id.* at 10–11). Accordingly, the Government argues that all variants of Tennessee Aggravated Assault, including Reckless Aggravated Assault, categorically qualify as crimes of violence under U.S.S.G. § 4B1.2(a)'s "use-of-force" clause. (*Id.* at 13–15).

Defendant asserts several counterarguments in an attempt to distinguish *Voisine*. First, Defendant argues that several lower courts have declined to extend *Voisine*'s construction of the term "use" in 18 U.S.C. § 921(a)(33)(A)(ii) to the term "use" in U.S.S.G. § 4B1.2(a)(1). (Doc. 44 at 6). These cases will be discussed at greater length, *infra* Part II.C. Second, and contrary to the Government's view, Defendant argues that the purposes of the Misdemeanor Crime of Domestic Violence statute and the career offender provision of the Sentencing Guidelines are quite different. Specifically, Defendant claims that the Misdemeanor Crime of Domestic Violence statute was created to "close[ ] a dangerous loophole in gun control laws," whereas no such loophole was closed by the career offender enhancement. (Doc. 44 at 8) (quoting *Voisine*, 136 S.Ct. at 2276). Third, Defendant argues that the Supreme Court in *Voisine* itself noted that similarly worded statutes can be interpreted differently. *See Voisine*, 136 S.Ct. at 2280 n.4 ("Like *Leocal*, our decision today concerning § 921(a)(33)(A)'s scope does not resolve whether [18 U.S.C.] § 16[6] includes reckless behavior. Courts have sometimes given those two statutory definitions divergent readings in light of differences in their contexts and purposes, and we do not foreclose that possibility with respect to their required mental states."); *see also United States v. Castleman*, —— U.S. ——, 134 S.Ct. 1405, 1410, 188 L.Ed.2d 426 (2014) ("But here, the common-law meaning of 'force' fits perfectly: The very reasons we gave for rejecting that meaning in defining a 'violent felony' are reasons to embrace it in defining a 'misdemeanor crime of domestic violence.' "). This, Defendant claims, signals that the Supreme

---

**5.** The Government notes that the Sentencing Guidelines' definition of "crime-of-violence" is "derived from" the ACCA. (Doc. 41 at 11).

**6.** 18 U.S.C. § 16 reads, in relevant part, "The term 'crime of violence' means (a) an offense that has an element the use, attempted use, or threatened use of physical force against the

person or property of another." Because the wording of 18 U.S.C. § 16 is identical to the "use-of-force" clauses in the ACCA and the career offender enhancement, courts often apply case law analyzing 18 U.S.C. § 16 to the ACCA and U.S.S.G. § 4B1.2. *See, e.g., McMurray*, 653 F.3d at 373–74.

Court's interpretation of the word "use" in *Voisine* is limited to 18 U.S.C. § 921(a)(33)(A)(ii). Finally, Defendant notes that practical implications played a major role in *Voisine*—i.e., if crimes involving the *mens rea* of recklessness were excluded from the scope of 18 U.S.C. § 921(a)(33)(A)(ii), then 18 U.S.C. § 922(g)(9) would be rendered functionally inoperative in thirty-five jurisdictions. (Doc. 44 at 10); *Voisine*, 136 S.Ct. at 2280–81. Because the career offender enhancement suffers from no such infirmity, Defendant believes that *Voisine*'s rationale should not be extended thereto.

### C. Cases Discussing *Voisine*

The Parties have identified several cases discussing *Voisine* and its extension to the ACCA's and/or the career offender enhancement's "use-of-force" clauses. In short, four district court opinions support Defendant's reading of *Voisine*, whereas two circuit court and three district court opinions support the Government's reading. Each case will be briefly outlined in turn.

#### 1. Cases Supporting Defendant's Position

In *United States v. Sabetta*, 221 F.Supp.3d 210, 2016 WL 6157454 (D.R.I. Oct. 24, 2016), the District of Rhode Island refused to extend *Voisine*'s interpretation of the word "use" to the ACCA. The court first noted that, prior to *Voisine*, as in the Sixth Circuit, the First Circuit had ruled that the reckless use of force could not qualify as a "crime of violence." *Id.* at *3 (citing *United States v. Fish*, 758 F.3d 1, 8–10 (1st Cir. 2014)). The court went on to find that *Voisine* did not disrupt the *Fish* holding for three reasons: (1) the *Voisine* Court explicitly stated that its decision did not extend to 18 U.S.C. § 16, which "means that the First Circuit's holding in *Fish* that recklessness is insufficient under § 16's definition of 'crime of violence,' and the implicit application of that holding to the ACCA's definition of 'violent felony' in *Hudson*, continue to be binding in this Circuit." *Sabetta*, 2016 WL 6157454 at *8; (2) the Supreme Court "had previously defined terms that are used identically in the ACCA and the Misdemeanor Domestic Violence Act to have different meanings." *Id.* at *9;[7] and (3) in *Voisine*, the Supreme Court was worried about rendering inoperable the Misdemeanor Domestic Violence Act in a large number of jurisdictions. With the ACCA (as with the career offender enhancement), there is no such concern. *Id.*

Similarly, in *Jaramillo v. United States*, 2016 WL 5947265 (D. Utah Oct. 13, 2016), the District of Utah first identified Tenth Circuit case law establishing that crimes committed recklessly were not crimes of violence under U.S.S.G. 4B1.2(a). *Id.* at *6 (citing *United States v. Armijo*, 651 F.3d 1226, 1237 (10th Cir. 2011)). The *Jaramillo* court then noted the split of authorities on the question of whether *Voisine* applies to U.S.S.G. 4B1.2(a). *Id.* at *7. Citing similar concerns as the *Sabetta* court, the District of Utah held that it "cannot conclude that *Voisine* abrogated Tenth Circuit case law requiring a mental state greater than recklessness for predicate crimes under the ACCA. Until the Tenth Circuit sees fit to review [its case law] in light of *Voisine*, the Court is bound to follow those cases." *Jaramillo, Id.* at *8.

---

**7.** *See also Sabetta,* 2016 WL 6157454 at *9 ("The unifying theme in the Supreme Court's reasoning is that when Congress defines a misdemeanor, it intends a lower bar for culpability than when it defines a felony, even when it uses some of the same words to describe both types of offenses. In the same vein, the lower mens rea sufficient for a predicate *misdemeanor* is not necessarily sufficient for a violent *felony*.") (emphasis in original).

Two days prior to *Jaramillo*, the District of Utah released an opinion in *Broadbent v. United States*, 2016 WL 5922302 (D. Utah Oct 11, 2016). The *Broadbent* court also refused to extend *Voisine* because it "did not address the definition of a 'crime of violence' in the context of the Armed Career Criminal Act or the USSG," and because its holding "is expressly limited to the scope of § 921(a)(33)(A)." *Id.* at *5.

Finally, just weeks after *Voisine* was decided, the District of Maine declined to extend its rationale to the ACCA's use-of-force clause. *Bennett v. United States*, 2016 WL 3676145 at *4 (D. Me. July 6, 2016). The *Bennett* court first found that because the Supreme Court has interpreted similar terms in the ACCA and the Misdemeanor Crime of Violence statute in different ways, "it is far from clear that *Voisine*'s inclusion of recklessness within the misdemeanor convictions covered by 18 U.S.C. §§ 922(g)(9) & 921(a)(33)(a) [sic] portends a similar interpretation of the ACCA's force clause." *Id.* at *3. The court then applied an analysis similar to that in *Castleman*, and found that to give the term "use" the same meaning in the ACCA as it was given in *Voisine* would lead to "comical" results. *Id.* ("After all, if *Voisine*'s interpretation of 'use' is applied to ACCA, three past convictions for injuries that result from reckless plate throwing (the example discussed at length in *Voisine*), or reckless driving, could be sufficient to earn a designation as an 'armed career criminal.' Labeling a thrice-convicted 'Angry Plate Thrower' or 'Reckless Policeman' as an 'Armed Career Criminal' would appear to be the type of 'comical misfit' the Supreme Court has previously indicated must be avoided when interpreting 18 U.S.C. § 924(e)(2)(B).") (citations and footnotes omitted). Finally, the court concluded that because of the Supreme Court's "expressed hesitation" to apply the ACCA to "crimes which, though dangerous, are not typically committed by those whom one normally labels 'armed career criminals,'" it could not extend *Voisine*'s interpretation of the word "use" "to override the already-cited precedents holding that recklessness is an insufficient mens rea for purposes of the ACCA." *Id.* at *4.

## 2. Cases Supporting the Government's Position

Two Circuit Courts of Appeal have extended *Voisine*'s interpretation of the term "use" to the ACCA and/or the career offender enhancement. On September 22, 2016, the Fifth Circuit extended *Voisine*'s interpretation of the term "use" to the "use-of-force" clause found in U.S.S.G. § 4B1.2(a)(1). *United States v. Howell*, 838 F.3d 489, 501 (5th Cir. 2016). In support, it briefly cited to *Voisine*'s discussion of legislative history and found that "[t]he Sentencing Commission similarly must have known that the Model Penal Code had taken the position that a mens rea of recklessness should establish criminal liability, and that various states incorporated that view into assault statutes." *Id.*

Two weeks before *Howell*'s publication, the Eighth Circuit extended *Voisine* to the ACCA in *United States v. Fogg*, 836 F.3d 951 (8th Cir. 2016). With extreme brevity, the *Fogg* court concluded that because the ACCA's use-of-force clause contains the same language as its counterpart in 18 U.S.C. 921(a)(33)(A), *Voisine*'s reasoning must be extended to the ACCA. *Id.* at 956. Accordingly, both the Fifth and Eighth Circuit Courts of Appeal have held that crimes committed recklessly qualify as predicate offenses under other, similarly worded use-of-force clauses.

Three district courts have also extended *Voisine* to the ACCA and/or career offender enhancement. Most recently, the District of Massachusetts extended *Voisine* to the ACCA in *United States v. Webb*, 217 F.Supp.3d 381, 2016 WL 6647929 (D.

Mass. Nov. 9, 2016), relying in large part on the Fifth and Eighth Circuits' analyses in *Howell* and *Fogg*. 2016 WL 6647929 at \*11. The Northern District of Mississippi has also extended *Voisine* to the ACCA, simply relying on the relevant statutes' similar language. *Kirk v. United States*, 2016 WL 6476963 at \*6 (N.D. Miss. Nov. 1, 2016). Finally, the Middle District of North Carolina briefly mentioned, in a footnote, that *Voisine*'s holding logically extends to the ACCA's use-of-force clause. *Holman v. United States*, 2016 WL 6304727 at \*13 n.13 (M.D.N.C. Oct. 27, 2016) ("Reckless conduct thus constitutes a 'use' of force under the ACCA because the force clauses in 18 U.S.C. § 921(a)(33)(A)(ii) and the ACCA both define qualifying predicate offenses as those involving the 'use of physical force' against another.") (quoting *Fogg*, 836 F.3d at 956)).

### D. Application to the Case at Bar

■ As previously outlined, pre-*Voisine* Sixth Circuit case law was clear—a crime with the *mens rea* of recklessness does not qualify as a "crime of violence" under the ACCA or the Sentencing Guidelines' career offender enhancement. *See supra* Part II (introduction). This Court certainly has an obligation to follow the Supreme Court where an intervening decision of that Court directly reverses an opinion of the Sixth Circuit or implicitly reverses same through a case with indistinguishable facts. *In re Higgins*, 159 B.R. 212, 215–16 (S.D. Ohio 1993). If, however, the intervening decision neither expressly nor implicitly overrules the prior Sixth Circuit decision, this Court must "be extremely careful in concluding that circuit precedent is no longer good law," *Id.* at 216 (quoting *Rodriguez v. Bowen*, 678 F.Supp. 1456, 1462 (E.D. Cal. 1988)), and should only deviate from such authority where it is "powerfully convinced that the circuit will overrule itself at the next available opportunity." *Id.* Stated another way,

"*sub silentio* overruling of a Court of Appeals decision by a Supreme Court case resting on different facts is a rare occurrence," and thus requires strong, objective evidence that the "higher court would repudiate [its holding] if given a chance to do so." *Id.* (quoting *Olson v. Paine, Webber, Jackson & Curtis, Inc.*, 806 F.2d 731, 734 (7th Cir. 1986)).

After carefully reviewing *Voisine* and the cases citing thereto, the Court is not convinced that the Sixth Circuit would interpret *Voisine* as invalidating the *McMurray* line of cases. Three primary reasons drive the Court's skepticism. First, and most importantly, the Supreme Court in *Voisine* explicitly stated that its interpretation of the term "use" did not extend to 18 U.S.C. § 16, notwithstanding the fact that it uses nearly identical language as is found in 18 U.S.C. § 921(a)(33)(A). *Voisine*, —— U.S. ——, 136 S.Ct. 2272, 2280 n.4, 195 L.Ed.2d 736 ("Like *Leocal*, our decision today concerning § 921(a)(33)(A)'s scope does not resolve whether § 16 includes reckless behavior. Courts have sometimes given those two statutory definitions divergent readings in light of differences in their contexts and purposes, and we do not foreclose that possibility with respect to their required mental states."). It stands to reason, therefore, that the Supreme Court's interpretation of the word "use" in *Voisine* does not extend to the career offender guidelines solely by virtue of the similar language in the "use-of-force" clauses found in 18 U.S.C. § 921(a)(33)(A) and U.S.S.G. § 4B1.2(a)(1).

Second, and relatedly, as the Supreme Court stated in the above-quoted passage, differences in context and purpose can lead to divergent readings of similarly worded statutes. In *Voisine*, the Supreme Court repeatedly referenced the Misdemeanor Crime of Violence Act's context

and purpose. Specifically, it found that 18 U.S.C. § 922(g)(9) was enacted to "close [a] dangerous loophole in the gun control laws" that permitted domestic violence convicts to possess firearms because "many perpetrators of domestic violence are charged with misdemeanors rather than felonies." *Voisine*, 136 S.Ct. at 2276 (alteration in original) (internal quotation marks omitted). The Court went on to discuss the history of domestic violence statutes, and noted that when Congress passed the Misdemeanor Crime of Violence Act, thirty-four states and the District of Columbia "defined such misdemeanor offenses [of domestic violence] to include the reckless infliction of bodily harm." *Id.* at 2280. The inclusion of recklessness as an appropriate *mens rea* to find one guilty of such a misdemeanor is grounded in the Model Penal Code, which has long "taken the position that a *mens rea* of recklessness should generally suffice to establish criminal liability, including for assault." *Id.* Accordingly, the Court found that at the time Congress passed the Misdemeanor Crime of Violence Act, it "must have known that it was sweeping in some persons who had engaged in reckless conduct." *Id.* The Court reinforced its logic by finding that if the term "use" did not encompass reckless conduct, then 18 U.S.C. § 922(g)(9) would be rendered functionally inoperative in thirty-five jurisdictions, and that Congress could not have intended such a result. *Id.* at 2280–81.

The Fifth Circuit in *Howell* seized upon this analysis, arguing that

> [t]he Supreme Court's discussion in *Voisine* of the history of modern assault statutes is also illuminating as to the backdrop against which the Sentencing Commission defined a "crime of violence" as including "use" of force against another person ... The Sentencing Commission similarly must have known that the Model Penal Code had taken the position that a mens rea of reckless-

ness should establish criminal liability, and that various states incorporated that view into assault statutes. In any event, the Commission has largely modeled the "crime of violence" definition that includes ... "use" of force after the ACCA's similar "use" of force provision.

*Howell*, 838 F.3d at 501. Respectfully, the Court finds the *Howell* analysis misguided, and that "the history of modern assault statutes," is in no way "illuminating as to the backdrop against which the Sentencing Commission defined a 'crime of violence' as including 'use' of force against another person." *Id.* In *Voisine*, the discussion of modern assault statutes was confined to the context of domestic violence, which the Supreme Court found was often punished by misdemeanors, rather than felonies. *Voisine*, 136 S.Ct. at 2276 ("But many perpetrators of domestic violence are charged with misdemeanors rather than felonies, notwithstanding the harmfulness of their conduct."). In defining a "crime of violence" under the career offender enhancement, however, the Sentencing Commission did not simply look to the misdemeanor crimes of assault and battery, but rather considered a myriad of other statutes, including felonies, that serve as predicate offenses. Therefore, the Model Penal Code's position that a *mens rea* of recklessness could suffice to establish criminal liability for assault is far less illuminating when considering the career offender enhancement than it is when considering the Misdemeanor Crime of Domestic Violence statute. In short, the Supreme Court's concern in *Voisine* that excluding reckless conduct from the term "use" would render 18 U.S.C. § 922(g)(9) functionally inoperative in the majority of the United States is simply not present in the context the career offender enhancement. As discussed above, the differing contexts of these laws permit the Court to give their statutory

definitions divergent readings. *Voisine*, 136 S.Ct. at 2280 n.4

Finally, the Court is persuaded by the *Bennett* court's finding that extending *Voisine* to the case at bar would lead to a "comical misfit," in which "three past convictions for injuries that result from reckless plate throwing (the example discussed at length in *Voisine* ), or reckless driving, could be sufficient to earn a designation as an 'armed career criminal.' " *Bennett*, 2016 WL 3676145 at *3. As the *Bennett* Court noted, "the Supreme Court expressly acknowledged an ongoing hesitat[ion] ... to apply the [ACCA] to crimes which, though dangerous, are not typically committed by those whom one normally labels armed career criminals." *Id.* at *4 (internal quotation marks and citations omitted). The Court finds that this rationale applies equally in the context of the career offender enhancement, U.S.S.G. § 4B1.1.

Given these findings, the Court is not powerfully convinced that the Sixth Circuit would conclude at the next available opportunity that *Voisine* overruled *McMurray*. Accordingly, it is bound to follow *McMurray* until such time as the Sixth Circuit sees fit to review its case law.[8] Because *McMurray* dictates that a crime committed recklessly cannot qualify as a "crime of violence," Defendant's Reckless Aggravated Assault conviction cannot qualify as a predicate offense under U.S.S.G. § 4B1.2(a), and Defendant is thus not subject to U.S.S.G. § 4B1.1's career offender enhancement. *McMurray*, 653 F.3d at 374–75 ("Thus, pursuant to *Leocal* and *Portela*, we conclude that the 'use of physical force' clause of the ACCA, § 924(e)(2)(B)(i), requires more than reck-less conduct."); *see also United States v. Denson*, 728 F.3d 603, 607 (6th Cir. 2013) ("Second, we analyze a crime of violence under the career-offender guideline just as we do a 'violent felony' under the Armed Career Criminal Act (ACCA), and so rely on ACCA cases here.") (citations omitted).

### E. The Parties' Plea Agreement

■ Having found that under binding Sixth Circuit case law Defendant is not subject to the career offender enhancement, the Court now turns to the Parties' plea agreement, which reads, in relevant part:

> defendant and the United States agree that a sentence of 188 months' incarceration followed by supervised release for five years is the appropriate disposition of this case ... The Parties recognize and agree that the proposed sentence is based on a Guidelines sentencing range based on the career offender guideline. The parties submit that the proposed sentence is sufficient, but not greater than necessary, to satisfy the factors set forth in 18 U.S.C. § 3553(a).

(Doc. 27 at 3–4). The United States argues that even if the Court were to find that Defendant is not a career offender, the Court should still accept the plea agreement. Specifically, the United States claims that the Defendant's agreement that 188 months' incarceration is "sufficient, but not greater than necessary, to satisfy the factors set forth in 18 U.S.C. § 3553(a)," is an independent ground upon which the Court can accept the plea agreement. The United States believes this would be just because in the plea agree-

---

8. It appears that the Sixth Circuit is poised to review *McMurray* in light of *Voisine* in *United States v. Plemons*, No. 15–6076 (6th Cir.), *Lofties v. United States*, No. 15–6427 (6th Cir.), and *United States v. Alexander*, No. 16–5494 (6th Cir.). (Doc. 59 at 14 n.8). The Court, however, cannot delay the disposition of Defendant's motion until these panels release their opinions. Because Defendant has not yet been convicted, he retains his right to a speedy trial. U.S. CONST. Amend. VI; 18 U.S.C. § 3161.

ment, the United States agreed to forego pursuing other robbery charges against Defendant. (Doc. 50 at 9).

The Court disagrees with the United States' position, and refuses to read one sentence of the plea agreement in isolation to justify its acceptance. It is clear that the Parties explicitly contemplated that Defendant was a career offender in crafting his Rule 11(c)(1)(C) plea agreement. Because the Court has found that Defendant is not, in fact, a career offender, *see supra* Part II.D, it cannot find that it is in the interests of justice to accept the Parties' plea agreement. *United States v. Skidmore*, 998 F.2d 372, 376 (6th Cir. 1993) ("Rule 11 does not limit the reasons for which the district court may reject a proposed plea agreement; rather, its terms permit a district court to reject a plea agreement either because the proposed agreement is too lenient or because it is too harsh. Although it may be a rare case where the district court finds the proposed agreement too harsh, the Rule provides for those cases."). As noted in the plea agreement, should the Court decline to accept it, "either party will be free to withdraw from the plea agreement." (Doc. 27 at 4). Accordingly, if the United States wishes to pursue additional robbery charges against Defendant in lieu of negotiating a new plea agreement, it is free to do so.

## III. CONCLUSION

For the reasons stated herein, the Parties' Plea Agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C) (Doc. 27) is hereby **REJECTED**, and Defendant's Motion to Withdraw Guilty Plea (Doc. 39) is **MOOT**.

Notwithstanding these findings, the Parties **SHALL** appear before the Court **on January 26, 2017 at 2:00 p.m. EST** as previously scheduled. At this time, the Court will discharge its duties under Fed. R. Crim. P. 11(c)(5).

**SO ORDERED** this 24th day of January, 2017.

